Flower v. Cruikshank.

FLOWER v. CRUIKSHANK *et al.*

1. **Evidence:** BALANCE: CORROBORATION. The testimony of the parties hereto, as to the conditions of the contract between them, being substantially *in equilibrio*, their subsequent conduct in reference to the subject-matter of it is considered, and found to corroborate the theory of defendants.

2. **Real Estate:** TITLE NOT YET EARNED: EQUITABLE AID. Plaintiff agreed with defendants, his daughter and her husband, that they should occupy and cultivate his farm during the lifetime of him and his wife, and give them such care and support as they might need, and that, in consideration thereof, the daughter should have an undivided one-half interest in the farm. *Held* that the daughter did not become the equitable owner of such half interest during the lifetime of her parents, because the conditions on her part were not yet fully performed, and that equity could not decree her to be the equitable owner of such interest.

3. ———: CONTRACT TO SUPPORT PARENTS FOR INTEREST IN: DISAFFIRMANCE: EQUITY. In this case the evidence shows a contract to support parents in consideration of an interest in real estate. Plaintiff, one of the parents, and the owner of the land, did not claim a breach of the contract, nor a disaffirmance of it, but that no such contract had been made. *Held* that, whatever his right to disaffirm it might be, since he had not done so, and did not allege any breach of it on the part of defendants, it remained in full force, and equity could not disregard it and grant plaintiff a decree quieting his title in the land and giving him possession thereof, the defendants being entitled to such possession under the contract.

*Appeal from Humboldt District Court.*—HON. LOT
THOMAS, Judge.

FILED, FEBRUARY 1, 1889.

THE subject of this action is a farm of three hun-
dred and twenty acres in Humboldt county. For many
years prior to April, 1879, plaintiff had been the owner
of said farm, and the legal title thereto is still vested in
him. In 1876 defendants, who are the daughter and
son-in-law of plaintiff, went into possession under a
parol lease, and have remained in possession ever since.
They claim, however, that in 1879 a new contract was
entered into, by the terms of which they were to con-
tinue to cultivate the farm during the lifetime of plain-
tiff, who was then about seventy years old, and afford
him and his family, which consisted of himself and
wife, a support from the proceeds thereof, and care for
them in case they should come to need assistance and
care, and to apply any remainder of the proceeds, after
paying the expenses of conducting it and supporting
the two families, to the improvement of the farm, and
that, in consideration of their services, plaintiff was
to give defendant Esther F. an undivided one-half inter-
est in the place; and they allege that since the making
of that contract they have been in possession under it,
and have faithfully performed all their undertakings
under it. Plaintiff brought this action to quiet his
title, and for possession. Defendants pleaded the
alleged contract of 1879, and prayed that Esther F. be
adjudged to be the equitable owner of an undivided
one-half of the property. The district court entered
judgment for plaintiff in accordance with the prayer of
the petition; but the decree provides that the parties
may, within a specified time, file such additional
pleadings as may be necessary to effect an accounting
between them. Defendants appeal.

*Albert E. Clark* and *A. D. Bicknell*, for appellants.

*Wright & Farrell*, for appellee.

Flower v. Cruikshank.

REED, C. J.—I. The parties agree that a new arrangement with reference to the occupation and carry-

1. EVIDENCE: balance: corrobora tion.

ing on the farm was entered into in April, 1879, but they disagree as to the terms of the agreement. Plaintiff testified that the contract was entered into with defendant George L. Cruikshank, and that by its terms he transferred to Cruikshank an undivided one-half interest in the stock and personal property on the farm in consideration of the undertaking of the latter to assist him in paying certain indebtedness he was then owing, and that the farm was to be carried on by the parties jointly, the proceeds to be devoted to the payment of the taxes on the place, and the expense of carrying it on, and the remaider to be equally divided between them. He also testified that some months after the contract was entered into he promised that if defendants would remain on the farm during his lifetime and that of his wife, and would care for them in case they should come to require care and attention in their old age, he would give defendant Esther as her share of his estate an undivided one-half of the farm, while defendant George L. testified that the agreement entered into in April was substantially as alleged in the answer, and· that the arrangement with reference to the personal property and the payment of the debts was subsequently entered into. On this question of fact we think the preponderance of the evidence is with the defendants. If the case depended on the direct testimony of the two witnesses, who alone have personal knowledge of the transaction, it could hardly be said that either claim was established; for, while they appear to be equally candid and credible, there is a direct and positive conflict in their testimony. We think, however, that defendant is corroborated by the action and conduct of the parties subsequent to the making of the contract. There never has been any division of the proceeds of the farm, or any accounting

between the parties with reference to it. Defendant has carried on the farm, employed and paid the help, disposed of the produce, and applied the proceeds in payment of the expenses and for the support of his family, giving to plaintiff, from time to time, such amounts as he required for his own use. He has also devoted to the same use means of his own not derived from the farm, amounting in the aggregate to a considerable sum. He has also expended nearly one thousand dollars in permanent improvements on the farm, the amount being derived from the sale of the produce and stock from the place. No account of the receipts and expenditures has ever been kept by either of the parties; nor did plaintiff at any time make any objection to the manner in which the business was being conducted, or any demand for a different application of the proceeds. These facts are strongly corroborative of defendants' claim. They are also quite inconsistent with that asserted by plaintiff, and, when considered in connection with the direct testimony, they lead us to the conclusion that the contract was as claimed by defendants.

II. It does not follow from our finding of fact, however, that defendants are entitled to the affirmative relief demanded in their answer. The contract was executory in all of its provisions. Defendants were to render the services contracted for during the lifetime of plaintiff and his wife. As part compensation for the services, defendant Esther F. was to receive an undivided one-half of their farm. She did not become the equitable owner of that interest upon the making of the contract, but will be entitled to receive that interest only when she and her husband shall have performed their undertakings under it. The only present right of defendants in the farm under the contract is the right to occupy and cultivate it according to the terms of the agreement. But the ownership of the property has not yet accrued to them.

*2. REAL estate: title not yet earned: equitable aid.*

III. It was contended that the agreement, from its nature, being for personal services and care, is necessarily

**8. ——: contract to support parents for interest in: disaffirmance: equity.** determinable at the election of either of the parties, and that upon its determination the remedy of the one aggrieved is in an action for damages. It is probably true that while the contract remained executory a court of equity would not decree specific performance. A court could not enforce an undertaking to render personal service or care to another. Nor could it compel the other party to such a contract to receive the attention or service of another against his will. For a breach of an undertaking of that kind the parties would be left to their remedy at law. But the contract was valid. It had a lawful object, and was certain and definite in its terms; and, when fully performed, a court of equity would enforce the rights of the parties under it. *Franklin v. Tuckerman*, 68 Iowa, 572. There is no question in the case as to a breach or termination of the contract. Plaintiff's contention is that no such contract ever was entered into; not that there has been a breach by defendants, or that he has terminated it. Upon that state of facts it is clear that a court of equity will not grant him the relief demanded. We do not determine whether he has the right to terminate the contract or not; but, if that right should be conceded to him, he could exercise it only upon payment or by offering to pay the damages which defendants would sustain in consequence of such termination. But he has neither paid nor offered to compensate defendants for the services they have rendered under the contract, nor does he allege that the compensation which they have received in the enjoyment of the property is adequate compensation to them. The contract, therefore, remains in full force, and the courts cannot award the measure of relief which would be due him only in case of its termination, which is the measure of relief demanded. The judgment will therefore be reversed, and judgment will be entered in this or the district court, as the parties may elect, dismissing the petition.

REVERSED.