HENRY SHAW *et al.*

*v.*

MARY A. SCHOONOVER.

*Filed at Springfield October 31, 1889.*

1. LIMITATIONS—*adverse possession—character of possession required.* Adverse possession of land, to defeat the legal title, must have been hostile in its inception, and so continue uninterruptedly for twenty years. During that period there must be a continuous assertion or claim of ownership hostile to all others.

2. The possession must be of such a character as to clearly show that the occupant claims the land as his own, exclusively. A merely permissive possession is not sufficient. So long as the possessor declares that he holds in subordination to the better title, the possession will be regarded as held by consent, and the Statute of Limitations will not begin to run.

3. WITNESSES—*competency—party against those defending as heirs.* On bill by one of the heirs of a deceased person, who was a married woman, for the specific performance of a parol agreement of the ancestor to convey a tract of land, against the other heirs-at-law, neither the complainant nor her husband is a competent witness to prove the parol contract.

4. SPECIFIC PERFORMANCE—*verbal agreement to convey land—of the proof required.* A verbal contract respecting land will not be specific-

ally enforced unless it is established by clear and conclusive proof. When the bill is not only for the enforcement of a parol contract, but the contract, if enforced, will make a different distribution of the property of a deceased person, the evidence relied on to establish it is looked upon with jealousy, and should be weighed in the most scrupulous manner.

APPEAL from the Circuit Court of Fulton county; the Hon. JOHN C. BAGBY, Judge, presiding.

Mr. D. ABBOTT, and Mr. H. W. MASTERS, for the appellants:

Possession, to defeat the legal title, must be hostile, and continue uninterruptedly for twenty years. *Bolden* v. *Sherman,* 101 Ill. 483.

While color of title is not necessary, still such possession is not sufficient unless accompanied by a claim of ownership. *Weber* v. *Anderson,* 73 Ill. 439; *Kerr* v. *Hitt,* 75 id. 57.

The first and only witness put on the stand by the complainant in the cross-bill, to prove the alleged agreement of gift, was Jacob Schoonover, the husband of complainant, to the testimony of whom objection was made by defendants, and which was overruled, and he was permitted to testify.

The complainant in the cross-bill seeks to enforce a specific performance of an alleged verbal agreement made with her father, Robert Shaw, in his lifetime, against the defendants in the cross-bill, who are heirs of the said Robert Shaw, deceased, and have answered, denying such contract, and defend as heirs, which brings them clearly within the provisions of section 2 of the chapter entitled "Evidence," Starr & Curtis' Stat. page 1072. *Crane* v. *Crane,* 81 Ill. 165; *Warrick* v. *Hull,* 102 id. 280; *Treleaven* v. *Dixon,* 119 id. 548; *Comer* v. *Comer,* id. 171.

No such case is made as will warrant the court in divesting the appellants of their title in this farm, as heirs of Robert Shaw, deceased. *Clark* v. *Clark,* 122 Ill. 388; *Insurance Co.* v. *Rink,* 110 id. 538.

A specific performance will be withheld when it does not subserve justice. *Railroad Co.* v. *Reno*, 113 Ill. 39.

Specific performance is not a matter of right, but of sound judicial discretion, as may appear equitable under all the facts and circumstances of the case. *Beach* v. *Dyer*, 93 Ill. 295; *Woods* v. *Evans*, 113 id. 186; *Hatfield* v. *Willey*, 105 id. 286.

Clear and satisfactory proof is required to enforce specific performance to convey land. *Barley* v. *Edmunds*, 64 Ill. 125; *Allen* v. *Webb*, id. 352.

Mr. W. S. EDWARDS, and Messrs. GRAY & WAGGONER, for the appellee:

The reversal of a decree will not be justified on the ground that the evidence does not sustain it, although this court might be better satisfied if the finding had been otherwise. *Long* v. *Fox*, 100 Ill. 51; *Coari* v. *Olsen*, 91 id. 273.

The question whether the finding of facts should be sustained or set aside, does not depend upon the number of witnesses testifying on each side upon the disputed points. The number of witnesses may be on one side, while the decided weight of evidence may be on the other. *Bishop* v. *Busse*, 69 Ill. 403.

Although the evidence may not be entirely satisfactory, still if it tends to sustain the issue, and the circuit judge, who saw the witnesses on the stand, and had facilities for determining the weight of the evidence which this court does not possess, is satisfied with the verdict, and refuses to set it aside, this court will not disturb it. *Ferry Co.* v. *Higgins*, 72 Ill. 518.

The litigation is concerning the separate property of the wife of Jacob Schoonover, and he is a competent witness to testify to the facts detailed by him. *Mueller* v. *Rebhan*, 94 Ill. 147; *Pigg* v. *Carroll*, 89 id. 205; *Long* v. *Long*, 19 Bradw. 388; *Ebert* v. *Gording*, 116 Ill. 221.

It has been repeatedly held by this court, that where a father gives land to his child by parol, and the child moves upon the land and makes thereon valuable improvements, the

contract stands upon the same basis as a bargain and sale for a valuable consideration, and equity will compel a conveyance of the legal title. *Langston* v. *Bates,* 84 Ill. 524; *Bright* v. *Bright,* 41 id. 97; *Wood* v. *Thornly,* 58 id. 464; *Kurtz* v. *Hibner,* 55 id. 514.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

Robert Shaw died intestate in Fulton County on February 8, 1888, seized in fee of about 360 acres of land in that county, and leaving, as his heirs at law, eleven children, six sons and five daughters. This is a bill filed, on July 3, 1888, in the Circuit Court of Fulton county, for the partition of said lands, by five of the children, of whom the appellant Henry Shaw is one, against the widow of the deceased, and six of the children, of whom the appellee, Mary Ann Schoonover, is one, and also against Jacob Schoonover, the husband of appellee. Default was taken against all of the defendants, except appellee, and her husband, and John W. Shaw, who answered.

In her answer to the bill, appellee sets up, that, as to a certain 80 acre tract, part of the premises sought to be partitioned, she had been in possession of it for more than 20 years under claim of ownership, and she pleaded the 20 years' statute of limitations against the prayer of the bill for a partition of said 80 acres. She also filed a cross-bill, setting up, that, in 1867, her deceased father made an agreement with her, that, if she would move upon the 80 acre tract and live upon it, and make improvements upon it, he would convey it to her, and that she agreed to do so, and did do so, and that she has been in possession of it ever since, claiming to be owner; and further alleging, that the deceased in his life time, and his heirs since his death, have failed to make her a deed. The cross-bill prays that a commissioner be appointed to make a deed in accordance with said agreement, etc.

The ten other children answered the cross-bill admitting appellee's occupancy since 1868, but denying that any such agreement was ever made, or that her possession has been adverse, or that she has occupied the 80 acres under claim of ownership, or that she has made any other improvements than such as were necessary for her own benefit and convenience; and averring that, in March, 1868, the deceased agreed verbally with appellee that she should occupy the tract, and make such improvements as she liked for her own comfort, in consideration that she would pay the taxes as rent for the land; that no time was fixed for the occupancy to continue; that she went into possession and has ever since been in possession under said arrangement, and has enjoyed the rents and profits and paid the taxes; that she thereby became a tenant at will, or from year to year, of the deceased, etc.; and that she and defendants are tenants in common as heirs, etc.

The Circuit Court found the issues in favor of appellee, and rendered a decree in accordance with the prayer of the cross-bill.

Adverse possession sufficient to defeat the legal title must be hostile in its character and in its inception, and so continue uninterruptedly for twenty years. (*Turney* v. *Chamberlain*, 15 Ill. 271; *Bolden* v. *Sherman*, 101 id. 483). Twenty years' adverse possession of land, under a *continuous assertion of ownership*, hostile to all others, will constitute a bar to a right of entry. (*Kerr et al.* v. *Hitt*, 75 Ill. 51). If the owner permits the occupation of his land for a period of 20 years by a party *asserting ownership*, he is barred by the statute. (*Weber* v. *Anderson*, 73 Ill. 439). The possession must be of such a character as to clearly show that the occupant claims the land as his own exclusively. (*Ambrose* v. *Raley*, 58 Ill. 506). A permissive possession is not sufficient. The possession must have been originally taken or subsequently held with an intention to claim the premises as owner. So long as the possessor declares that he holds in subordination to the better

title, the possession will be regarded as held by consent. (Angell on Limitations, (6th ed.) sec. 384.)

Was the possession by appellee hostile in its character and under an exclusive claim of ownership? We think not.

Cyrus Bishop testifies: "Mrs. Schoonover has claimed to be owning this place during the time she has lived there;" William Swearingen testifies: "She treated it, I suppose, as her own—always heard them say it was their farm;" Elias Shaw says: "They treated it as their own—run it and managed it * * * She said he had given it to her;" John Shaw says: "Since father's death she has claimed this land—never claimed it before that I know of;" Mrs. Morgan says: "I think she claimed to be the owner of the land—think she claimed her father had given it to her;" John Cramblet testifies: "She treated it as I would my own farm so far as appearances are concerned." Robert La Master says: "Never heard her make any claim—have treated it as their own so far as I could see."

The foregoing, with the exception of the evidence of Jacob Schoonover which will be referred to hereafter, is all the testimony going to show an assertion of ownership by appellee. If it stood alone, it might be sufficient, when taken in connection with the admitted fact, that she was in the occupancy of the 80 acres for 20 years before the filing of this bill, to make the bar of the statute complete. But there is testimony of a clear and conclusive character, that she occupied the land by permission of her father and in subordination to his title.

Peter Shaw, John Barker and Rebecca Barker swear, that appellee went to her father's house in Missouri in 1884 to see him about this farm, and that, while she was there, they were present at a conversation between her and her father, in which she asked him to deed her the 80 acres, and he refused, saying "he hadn't an 80 apiece for them" and "it would be more than her share;" that she then asked him to deed her one 40 and she would give him $2000.00 for the other 40, but he told

her that she and her husband should buy a farm with their money, and let the rest of the children have a show. Rebecca Shaw swears that in 1886 she was at appellee's house, and appellee told her that they could only live on the land during her father's life-time, and that she would have bought the farm of her father in 1884, but he asked $60.00 an acre for it, which was more than it was worth. Abram Weaver, Dan. Harris, Alexander Shaw and Henry Shaw testify, that there was a meeting of the heirs at Henry Shaw's house on April 17, 1888, at which appellee and her husband were present; that appellee and her husband made no claim to own the farm, but made offers for its purchase, and, no purchase being agreed upon, said they would pay what rent was right; that her husband offered $4000.00 which was not considered enough; that, when he spoke about "paying cash rent," she said: "By God, pay grain rent, Jake." One or more of these witnesses say, that it was three weeks after this meeting before appellee set up her claim of ownership.

John Taylor swears that he met appellee and her husband after the meeting of April 17, 1888, and they told him they had offered $4000.00 for the land, and that the heirs wanted them to pay rent, and that they asked witness whether he thought rent could be collected of them. John Berry swears that about May 1, 1888, he saw appellee and her husband, and something was said about said meeting, and her husband said he would give $55.00 per acre for the land.

Bessie Ford swears, that in 1884 she heard appellee say, that she wished she had a piece of land to build a house upon— "heard her say she was living on her father's land." Henry Shaw says: "I have frequently heard her say it was Daddy's land." Mr. Barclay swears that, in March, 1888, he heard appellee say she was willing to take the land at $4000.00; and that she never claimed the land belonged to her.

One witness swears, that he heard appellee once say that, if her father would furnish the tile, they would tile the place.

George Morgan testifies that the land was called the old man's land after Schoonover went there. Elizabeth Morgan swears, that appellee told her "she was living on her father's farm," and called it her father's farm, and that she heard appellee say "they were keeping up the taxes for the use of it."

Eight witnesses swear, that they heard appellee say at different times that she and her husband were allowed the use of the farm in consideration of their paying the taxes and keeping up the improvements. Several of them swear that they heard her say so a great many times.

Several of the other heirs occupied lands of their deceased father upon the same terms upon which the 80 acres in question were occupied by appellee. One of them testifies as follows: "She (appellee) told me, if I would hold the farm I was living on, that her (she) and Mr. Schoonover would swear that Daddy gave it to me."

As to the verbal agreement set up in the cross-bill, the evidence does not satisfy us that any such agreement was ever made. The only witness, who testifies to it is Jacob Schoonover, one of the defendants below and husband of the complainant below. Objection was made to his testimony. The objection was over-ruled, and exception was taken. He was not a competent witness. His wife was not suing, as heir, for her inheritance. She was claiming to be the owner of the 80 acres by another title than that acquired under the statute of descents. The real defendants in the suit were her brothers and sisters, who were adverse parties, defending as the heirs of their deceased father, Robert Shaw. She being herself incompetent as a witness, her husband was also incompetent under the rule laid down in *Treleaven* v. *Dixon,* 119 Ill. 548 and *Way* v. *Harriman et al.* 126 id. 132.

One witness testifies that he once heard the intestate say he had told appellee she should have the land if she would move upon it. Three others say, that some eight or ten years before the time of giving their evidence they heard the intes-

tate say he intended, or expected, or was going, to give the farm to appellee. The testimony of the four last named witnesses is all the proof there is of the alleged agreement. This testimony, besides being overborne by the evidence, which has already been referred to, and by much more in the record that might be referred to, is of the kind that was condemned by this Court in *Bailey* v. *Edmunds,* 64 Ill. 125 and *Clark* v. *Clark,* 122 id. 388.

The cross-bill in this case is a bill to enforce the specific performance of a parol contract for the conveyance of real estate. Specific performance is not a matter of right, but of sound judicial discretion. A verbal contract respecting land will not be enforced unless it is established by clear and conclusive proof. (*Woods* v. *Evans,* 113 Ill. 186 ; *Wallace* v. *Rappleye et al.* 103 id. 229 ; *Clark* v. *Clark et al. supra*). Such proof is wanting here.

Moreover, the contract sought to be enforced in this case is not only a parol contract for the conveyance of real estate, but it makes a different distribution of the property of a deceased person from that provided by law. "The evidence relied upon to establish such a contract is looked upon with jealousy, and should be weighed in the most scrupulous manner." (*Wood* v. *Evans, supra*).

The decree of the Circuit Court is reversed, and the cause is remanded to the Circuit Court with directions to dismiss the cross-bill, and to proceed under the original bill in accordance with the views herein expressed.

*Decree reversed.*