George B. Bondies et al., Executors, v. T. F. Ivey et al.

Delivered January 9, 1897.

1.  Parol Contract for Sale of Land—Insufficient Proof of.

Where, in trespass to try title, the defendant, who has been in possession for several years and made valuable improvements, alleges a parol agreement by plaintiffs' intestate to convey the land (100 acres) in consideration of his services in looking after and protecting the remainder of the league as agent during the time of his occupancy, and the proof of the declarations of the intestate tend to show only that he promised to sell the land to defendant at a low price, and that defendant's improvements and services were fully compensated for by the use of the land, and the defendant's letters to such intestate during the period of such occupancy evidence an intention and effort on his part to buy the land,—the court should have instructed a verdict for plaintiffs.

2.  Practice on Appeal—Judgment not Rendered on Reversal if Issue is of Fact.

Where the case turns on an issue of fact, although the appellate court may reverse the judgment because the trial court erred in not instructing a verdict, yet the case will be remanded, as it can not be assumed that no other evidence will be adduced on another trial.

Appeal from Kaufman.  Tried below before Hon. J. E. Dillard.

*Davidson & Minor*, for appellants.—1.  The pleadings, the issue and the proof in this case clearly and unmistakably show that both the legal and equitable title to said land was in the estate of George Bondies, and the court was not authorized to give to the jury any charge touching the land in controversy other than a charge to find in favor of the plaintiff.  Bondies v. Ivey, 31 S. W. Rep., 244; Murphy v. Stell, 43 Texas, 135; Ann Berta Lodge v. Leverton, 42 Texas, 23, 27; Ward v. Stuart, 62 Texas, 334; Jones v. Jones, 49 Texas, 690, Gaskins v. Peebles, 44 Texas, 392; Bracken v. Hambrick, 25 Texas, 412; Jones v. Carver, 59 Texas, 294; Johnson v. Granger, 51 Texas, 44; Semmes v. Worthington, 38 Md., 298; Ackerman v. Ackerman, 24 N. J. Eq., 315; Shaw v. Shoonover, 130 Ill., 448; Flower v. Cruikshank, 77 Iowa, 110; Sturges v. Taylor (N. J.), 20 Atl. Rep., 369; Berry v. Hartzell, 91 Mo., 132.

2.  The court below erred in not directing a verdict in favor of the plaintiffs, as requested by them, and in not rendering judgment in favor of plaintiffs, non obstante veredicto, upon plaintiffs' motion, and for the reasons set out in said motion, and this court should reverse the judgment of the District Court, and proceed to render such judgment as that court should have rendered, that is, judgment in favor of plaintiffs for the land in controversy, and for costs, in this: that it is not necessary in this case for any matter of fact to be ascertained, nor for any damage to be assessed, nor is the matter to be decreed uncertain.  Waterworks v. Kennedy, 70 Texas, 235; Templeman v. Gibbs, 25 S. W. Rep., 737; Brown v. Renfro, 57 Texas, 832; Hays v. Stone, 36 Texas, 186; Basse v. Brownsville, 43 Texas, 440; 1 Black on Judgments, sec. 16; Creager v. Douglas, 77 Texas, 484; Johnson v. Wilcox, 53 Texas, 413; Arring-

ton v. Sneed, 18 Texas, 135; Paschal v. Percy, 7 Texas, 349; Love v. Doak, 5 Texas, 343; Blagge v. Moore, 23 S. W. Rep., 472; Sydnor v. Chambers, Dall., 601; Rev. Stats., art. 1027; Hermes v. Vaughn, 3 Texas Civ. App., 611.

*Huffmaster, Adams, Huffmaster & M. H. Gossett,* for appellees.—If Ivey went upon the land under a contract with Bondies, by the terms of which he was to have title to the 100 acres in controversy for protecting the league, keeping off squatters, etc., and Bondies was to make him title thereto when he, Bondies, or his sons should move upon the land and take possession thereof, and Ivey faithfully discharged all of his duties under this contract, and William Bondies, the son of plaintiff, at his father's instance and request, moved upon and took possession of said league in January, 1884, then Ivey's equity to the 100 acres was complete, and nothing that was said or written by him after said date could destroy his claim. The letters written by Ivey after said date were admissible in evidence to show the character of his holding prior to that time, and were a proper consideration for the jury for that purpose, but no court could legally tell the jury that such letters annihilated defendant's equitable claim to the land in controversy, which had matured, upon William Bondies, acting under directions of his father, moving upon and taking possession of all except said 100 acres of said land. Williams v. Rand, 30 S. W. Rep., 511; Bruce v. Washington, 80 Texas, 388; Hand v. Swann, 1 Texas Civ. App., 242; Cuellar v. Dewitt, 24 S. W. Rep., 671; Warrees v. Tredericks, 83 Texas, 383.

2. It is only in cases where the evidence is undisputed and in no wise controverted that the court is authorized to instruct the jury to find a verdict for one of the parties to the suit. Gilkey v. Peeler, 22 Texas, 663; Rogers v. Broadnax, 24 Texas, 538; Railway v. Connell, 84 Texas, 541.

FINLEY, ASSOCIATE JUSTICE.—This is the second appeal of this case, and the opinion on the first appeal, reversing and remanding the case, is reported in 31 Southwestern Reporter, 244.

On December 25, 1890, George Bondies, since deceased, and whose executors are the present appellants, brought a suit of trespass to try title against T. F. Ivey, one of the present appellees, in the District Court of Kaufman County, for 280 acres, a part of the Lopez league and labor. After appeal was taken and perfected from the former judgment of the District Court, George Bondies died, and at the September term, 1895, and after the reversal of the judgment on the former appeal, George B. Bondies and Lucian Minor, having qualified as the independent executors of the will of George Bondies, deceased, were made parties plaintiff in this suit, and on September 25, 1895, filed their second amended original petition against T. F. Ivey, the original defendant and making his wife, Amanda Ivey, a party defendant also. The defendants Ivey and wife disclaimed as to all the land

in controversy except 100 acres, described by metes and bounds, and as to this 100 acres they pleaded not guilty.   They also set up by special answer certain contracts and state of facts existing, as they alleged, between George Bondies and T. F. Ivey, from 1877 to the institution of this suit, constituting, as they alleged, such an equity in T. F. Ivey in this 100 acres as estopped George Bondies and his executors from asserting an adverse title and from dispossessing defendants to-wit: That T. F. Ivey, in January, 1877, at the request of George Bondies, moved upon the Lopez league of land in Kaufman County, under contract with Bondies to protect his interests in said league by keeping off squatters, protecting grass and timber, and preventing boundary encroachments, etc.; that in 1881, Ivey having continually remained in possession since 1877, and discharged all his duties under said first contract, he and Bondies entered into a new contract, by the terms of which, in consideration of the continued faithful discharge by Ivey of the duties above named, until ·Bondies or his children should move upon said league, or until Bondies should sell same, Bondies agreed to convey to Ivey 100 acres of land in the southwest corner of the league and labor; that Ivey had faithfully performed all the duties required of him under his contract; that in January, 1884, William Bondies, the son of George Bondies, and under his father's instructions, moved upon said league and took possession thereof, except the 100 acres claimed by Ivey, and assumed control of the interest of Bondies in said land; that in July, 1884, Bondies himself came to Ivey's house on said 100 acres of land, and while there walked with Ivey around said 100 acres, pointing out and designating to Ivey the lines and boundaries of said 100 acres which he intended Ivey to own and possess, and which he intended to convey to Ivey; that immediately thereafter Ivey procured the services of the county surveyor of Kaufman County, and had him survey out and establish the lines and corners of said 100 acres as designated and pointed out by Bondies, and immediately took possession thereof, claiming the same as his own, and steadily continued to do so; that at the time Ivey took possession of said 100 acres, as aforesaid, it was worth about $5 per acre, amounting in the aggregate to $500; that at the time said land was covered all over with brush; that after said 100-acre tract was surveyed, as aforesaid, Ivey inclosed it, cut off the brush and put the land in cultivation, and put valuable improvements thereon, to-wit, houses, fences, cisterns, wells and orchard, and cleared and broke the land, aggregating in value $2321; and that all said improvements were placed upon said land upon the faith of the promise by Bondies to convey to Ivey said 100 acres; that said land, without said improvements, is worth $500, and, with said improvements, is worth $2821; that it would be inequitable and unjust for appellants to deprive Ivey of said land; and prayed that the title to same be vested in Ivey, and that he have all such other and different relief as in law or equity he might be entitled to.

The case was tried before the court and a jury, and resulted in a ver-

dict and judgment for the defendants. The appellants moved for judgment in their favor non obstante veredicto, or for a new trial, which motion being overruled, they perfected their appeal, filed their assignments of error and statement of facts, and bring the case to this court by appeal.

Plaintiffs' proof showed a regular chain of title to the land, and the defendants' pleading and evidence and their entire case, as well as the charge given by the court, conceded that the title to the land in controversy was in the estate of George Bondies, deceased, except in so far as divested by and in pursuance of the contract to convey set up in the answer of the defendants and sought to be established by them.

The first assignment of error presented by appellants is based upon the refusal of the court to give the following special instruction: "You are instructed that the plaintiffs in this case are entitled to recover the land in controversy, and your verdict as to said premises in controversy must be in favor of the plaintiffs."

Plaintiffs established a complete chain of title to the land in controversy. The defendant attempted to prove an equitable title under a parol contract to convey, as alleged in his answer. The proof offered to establish such contract was not positive and direct proof by witnesses who heard the parties enter into such contract, but consisted of declarations of George Bondies, deceased, and acts of the parties which, it is urged, tend to prove the existence of such a contract. The declarations of Bondies, as testified to, tend to show that he intended that Ivey should ultimately own 100 acres of the tract, including the improvements placed thereon by Ivey; but they do not tend to show that he contracted with Ivey to convey to him the land in consideration of his services as agent. In fact, his declarations were to the contrary. He more than once said he intended Ivey to have 100 acres of the land, but he also declared his intention to sell it to him at a low price. The uncontroverted evidence shows, and the defendant himself alleges, that he went upon the land in 1877 as the agent of Bondies, and that he was paid for his services by free use of the land. He alleges that this contract terminated in 1881, and that he remained upon the land under a new contract then entered into, by the terms of which he was to receive for his services, both past and future, one hundred acres of the land, to be conveyed to him by Bondies when he should sell the league, or his children should go upon it to reside. No witness testified to the making of such a contract; and the declarations of Bondies proven do not show the existence of such a contract. They only show the intention of Bondies that Ivey should finally have and own 100 acres of the land.

It was shown that Ivey placed valuable and permanent improvements upon the land; but, on the other hand, it was shown that the use of the land fairly compensated for the improvements and services rendered. It was also shown that Bondies went upon the land with Ivey, told him that was the land he intended for him, and that he would convey it to him when Ivey got it in a state of cultivation.

In explanation of all these circumstances, plaintiff read in evidence thirty-nine letters written by Ivey during the period extending from July 3, 1880, to August 11, 1889. These letters were written in each of the years from 1880 to 1889, inclusive, and were all addressed to George Bondies, save one to his attorneys, Robertson & Coke. These letters show conclusively that during all that period Ivey was upon the land in the capacity of agent of Bondies, that he was paid for his services and improvements upon the land by the use of the land, and that it was contemplated by both parties that Ivey should have the privilege of buying the 100 acres upon which his improvements were situated, paying a price therefor to be fixed by Bondies. They show in fact, that the terms of the purchase by Ivey were at one time fixed and agreed upon, but the sale failed of consummation by reason of the fact that Ivey was not able to raise the purchase money to be paid. Ivey never claimed during the entire period covered by his letters that Bondies should convey him the land upon consideration of his services; on the contrary, his letters are profuse in expressions of gratitude to Bondies for the ample and abundant compensation received from the free use of the land. He importuned Bondies continually to sell him the land, or put it in a shape so that the privilege of buying would be secured to him. These letters not only render it improbable that the alleged contract to convey existed, but they necessarily lead the reasonable mind to the conclusion that it did not exist. It is not a case of conflicting evidence. The declarations and acts of Bondies are not inconsistent with the letters; they are entirely consistent with them, and the letters are fully explanatory of all the declarations and acts proven, for the purpose of establishing the alleged parol contract of sale. There is no question of credibility of testimony, or weight of evidence upon which the verdict depends; there is an absence of evidence necessary as a basis for the verdict.

The court should have instructed a verdict for the plaintiffs, as requested. Bondies v. Ivey, 31 S. W. Rep., 244; Murphy v. Stell, 43 Texas, 135; Ann Berta Lodge v. Leverton, 42 Texas, 23, 27; Ward v. Stuart, 62 Texas, 334; Jones v. Jones, 49 Texas, 690; Gaskins v. Peebles, 44 Texas, 392; Brackin v. Hambrick, 25 Texas, 412; Jones v. Carver, 59 Texas, 294; Johnson v. Granger, 51 Texas, 44; Semmes v. Worthington, 38 Md., 298; Ackerman v. Ackerman, 24 N. J. Eq., 315; Shaw v. Shoonover, 130 Ill., 448; Flower v. Cruikshank, 77 Iowa, 110; Sturgis v. Taylor (N. J.), 20 Atl. Rep., 269; Berry v. Hartzell, 91 Mo., 132.

We are urged by appellants to render the judgment here which they should have obtained in the trial court. We do not think this should be done. An issue of fact is raised by the pleadings, the finding of a jury is demanded upon that issue, and we cannot safely assume that no other evidence will be adduced upon another trial. Patrick v. Smith, 90 Texas, 267.

*Reversed and remanded.*