ERNEST C. MIRES, Defendant in Error, *vs.* PEARL L. LAU-BENHEIMER *et al.* Plaintiffs in Error.

*Opinion filed December 22, 1915—Rehearing denied Feb. 3, 1916.*

1. WITNESSES—*when widow may testify in partition suit.* In a suit for partition and the assignment of homestead and dower to the widow, the latter, if she has no other interest in the controversy, may testify except as to admissions or conversations of her deceased husband or matters of which she acquired knowledge from the existence of the marriage relation.

2. SAME—*when neither the complainant nor cross-complainant is competent.* Where one brings a partition suit claiming as co-heir with the defendant, his sister, and the latter files a cross-bill claiming as sole heir on the theory that the brother's right to inherit had been extinguished by reason of a release of his expectancy, neither the complainant nor the cross-complainant is a competent witness in his or her own behalf.

3. REAL PROPERTY—*release to ancestor of expectancy as an heir extinguishes right to inherit.* A release to the ancestor, by an heir, of his expectancy as an heir operates, not as a contract or as a transfer or conveyance either to the ancestor or the other heirs, but as an extinguishment of the right of the prospective heir to take any estate by descent and obliterates his right to inherit. (*Donough* v. *Garland*, 269 Ill. 565, followed.)

4. SAME—*the expectancy of an inheritance may be released by parol—Statute of Frauds.* Where a father executes a deed for a tract of land to one of his children, who accepts and takes posses-

sion of the land upon the express understanding and agreement that it is in lieu of all claims the child may have in the residue of the father's estate, the contract is binding though it rests in parol, and the Statute of Frauds is no defense.

5. SAME—*agreement by prospective heir to release expectancy must be certain and unambiguous.* An agreement by a prospective heir with his ancestor to take certain property conveyed to him as in full of his expectancy in the grantor's estate must be certain and unambiguous and be proved with a reasonable degree of certainty, but when it is so proved it will be enforced. .

WRIT OF ERROR to the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding.

JAMES T. TERRY, and THOMAS J. GRAYDON, (EDWIN M. ASHCRAFT, of counsel,) for plaintiffs in error.

E. A. AGARD, and BERT W. ADSIT, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The defendant in error, Ernest C. Mires, filed his bill in this case in the circuit court of Livingston county for the partition of 120 acres of farm land and for the assignment of dower therein to his mother, Louise F. Mires, alleging that the land was owned by his father, Frank W. Mires, at the time of his death, on September 7, 1912, and descended to his sister, Pearl L. Laubenheimer, and himself in fee simple as tenants in common, subject to the dower of their mother. The plaintiffs in error, Pearl L. Laubenheimer and Louise F. Mires, two of the defendants to the bill, answered the same and filed a cross-bill, admitting in each the ownership of the land by Frank W. Mires at the time of his death but denying that the complainant was entitled to any interest in the property as heir of his father, and charging that on March 5, 1898, he released to his father his expectancy in the estate of his father in consideration of the execution by his father and mother of a deed to him

of 80 acres of land in Indiana. The cross-bill further alleged that Frank W. Mires died seized of two lots in Fairbury occupied by him as his homestead and since occupied by his widow, in which she was entitled to homestead and dower. The cross-bill contained a prayer that the release of the expectancy of the complainant in the estate of his father be enforced and Pearl L. Laubenheimer be declared the only heir to the estate, including the lots in Fairbury, subject to the dower and homestead of the widow, and also a general prayer for relief. The complainant in the original bill answered the cross-bill, admitting that he received a deed of the Indiana land but denying that it was accepted by him for his expectancy in the estate of his father, and alleging that it was made for a good and valuable consideration and the greater part of the purchase price for the land was paid with his money. The issue was referred to the master in chancery to take the evidence and report his conclusions of fact and law. The master took the evidence and reported the same, together with his conclusion that the conveyance to the complainant was not made in consideration of a release of his expectancy in the estate of his father, and he recommended a partition of the lands described in the original bill and the dismissal of the cross-bill, but if the court should be advised that the parties were entitled to a partition of the lots in Fairbury, he recommended that the homestead and dower should be assigned and set off and the lots partitioned. The cause was heard on exceptions to the report, which were overruled, and a decree was entered for partition of the lands described in the original bill and the cross-bill was dismissed for want of equity.

The execution by Frank W. Mires and Louise F. Mires, his wife, of the deed to Ernest C. Mires on March 5, 1898, was admitted by his answer to the cross-bill, and Pearl L. Laubenheimer and Louise F. Mires, complainants in that bill, testified before the master that the deed was executed

in consideration of a release by Ernest C. Mires of his expectancy in the estate of his father. Ernest C. Mires also testified and contradicted his sister and mother, claiming that his father was indebted to him for work during his minority when the land was first purchased, in 1891, to the extent of a part of the purchase price, and that when the land was afterward conveyed to him it was not in consideration of a release of his expectancy. The master regarded all of the witnesses as competent, with the exception that the widow could not testify to conversations or admissions of her deceased husband, and his report was based on that view of the law, which was also adopted by the court. The master was correct in his ruling that the widow could not testify to admissions or conversations of her husband but was otherwise competent, as she had no interest in the controversy. (*Donnan* v. *Donnan,* 236 Ill. 341; *Baker* v. *Baker,* 239 id. 82.) Neither Ernest C. Mires nor Pearl L. Laubenheimer was a competent witness in the case. Ernest C. Mires was not a competent witness because Pearl L. Laubenheimer was claiming the whole title as the only heir of her father and that Ernest C. Mires was not an heir. A release to the ancestor, by an heir, of his expectancy as heir operates not as a contract or as a transfer or a conveyance either to the ancestor or to the other heirs, but as an extinguishment of his right to take any estate by descent. It obliterates the right to inherit to an extent substantially equivalent to its obliteration by the death of an heir expectant without issue before the death of the ancestor. The other heirs inherit the entire estate, not upon the theory of an assignment to them of the estate in expectancy of the heir executing the release nor upon the theory of a contract to assign the same, but upon the theory of an extinguishment of that estate. In contests where an expectancy has been released the transaction has frequently been spoken of as a contract or agreement, but the legal effect was declared as above stated in *Crum* v. *Sawyer,* 132 Ill. 443, and was

re-stated in *Donough* v. *Garland*, 269 Ill. 565, where an assignment to a stranger was distinguished from a release. The controversy in this case was whether Pearl L. Laubenheimer was entitled to the whole estate as the only heir of her father or whether she and Ernest C. Mires were each entitled to an undivided half as heirs. Pearl L. Laubenheimer was not a competent witness because Ernest C. Mires was claiming an undivided half of the lands as heir of his father. (*Shaw* v. *Schoonover*, 130 Ill. 448; *Stodder* v. *Hoffman*, 158 id. 486; *Laurence* v. *Laurence*, 164 id. 367; *Waugh* v. *Moan*, 200 id. 298.) *Pigg* v. *Carroll*, 89 Ill. 205, was explained in *Laurence* v. *Laurence, supra*, as applying only to controversies as to the distribution of the estate between parties conceded to be heirs and not applying to a controversy whether a party is an heir. There was no decision on the question in *Kershaw* v. *Kershaw*, 102 Ill. 307. This cause being in equity, the question is whether the competent evidence supports the decree.

The release alleged in the cross-bill was verbal and Ernest C. Mires pleaded the Statute of Frauds, but that was not a defense. Where a father executes a deed for a tract of land to one child, who accepts and takes possession of the land upon the express understanding and agreement that it is in lieu of all claims such child may have in the residue of the father's estate, the contract is legal and binding and is not within the Statute of Frauds. The expectancy of an inheritance is not such an interest in land as cannot be surrendered or extinguished by parol. (*Galbraith* v. *Mc-Lain*, 84 Ill. 379; *Kershaw* v. *Kershaw, supra; Bolin* v. *Bolin*, 245 Ill. 613.) It is the rule, however, that an agreement of a prospective heir with his ancestor to take certain property conveyed to him in full of his expectancy in the grantor's estate must be certain and unambiguous in its terms and be proved at least with a reasonable degree of certainty. (*Long* v. *Long*, 118 Ill. 638; *Bartmess* v. *Fuller*, 170 id. 193.) Where a parol contract is alleged af-

fecting the descent of property different from that which the law prescribes, the proof must be clear and the testimony direct and positive.

When the incompetent testimony is eliminated the evidence proved the following facts: Ernest C. Mires lived at home most of the time and helped his father in the farm work during his minority, up to 1891. He went to California at one time and remained three or four months and came back because his eyes were affected by the work he was doing, and he was away at one time running a thrashing machine. His father was sometimes afflicted with rheumatism but was always around and at least part of the time had other help. There was no evidence tending to prove any agreement to pay wages to the son or anything in his relations with his father different from those usually existing. In 1891 Ernest was still a minor and about to be married, and he went with his father to Indiana and the father bought 90 acres of land, 10 acres of which were afterward sold and conveyed away. It was intended that Ernest should occupy the land, and he soon afterward married and moved on the land. In March, 1898, he returned to his father's home in Fairbury and brought with him his little boy, Franklin. On March 5, 1898, the deed in question to the Indiana land was prepared by a police magistrate, who brought it to the house, where he took the acknowledgment. The police magistrate testified that they had a family affair settlement of some kind but he did not know just what it was; that the father, Frank W. Mires, said something about some land he gave or was to give to Ernest and said that they were making a settlement of their affairs; that they talked about some property and the father said that Ernest was to receive this 80 acres of land as his share, but the witness did not remember whether Ernest was present or not. He had no recollection whether Ernest was present or heard what was said. The same day Ernest, at the request of his father, undertook to prepare

the draft of a will and wrote the same, by which his father gave him $25 as a legacy, gave to his wife, Louise F. Mires, the lots in Fairbury, all his personal property and absolute control of the farm property and the income therefrom for her life, and devised to his daughter, Pearl, 80 acres of the farm for life with remainder to her children, but if she died without children then to Ernest and his heirs, and 40 acres to the grandson, Franklin. In the draft for the will prepared by Ernest, following the bequest of $25 to him, there appears the following written with a pencil: "he having previously received 80 acres of land in the State of Ind." The mother and sister testified that Ernest made this addition or interlineation, but were mistaken. It was made by the police magistrate, and counsel for the defendant in error regard this fact as of great importance in the case and have caused the original draft to be certified to this court for examination. We do not regard the question who made it as of any particular importance. Whoever made it, did so at the instance of the father as an explanation of the small bequest to Ernest. If it had been written by Ernest it would not constitute an admission that he had previously received 80 acres of land in Indiana for a release of his expectancy as an heir. The addition was just as consistent with the gift of the land as with such a release.

It cannot be doubted from the evidence that the father understood that the deed was made and accepted as the share of Ernest in his estate. The mother, Louise F. Mires, was a competent witness except as to conversations with or admissions by her husband, and while most of her testimony concerning the transaction related to conversations in which she and the husband, son and daughter all took part, she also testified to a conversation with Ernest when they talked the matter over, and her testimony was that he said, "Mamma, if you will deed me the Indiana land I will release all interest in father's estate and make no further

claims against it;" that she said, "Will you promise me never to mortgage or sell it if I make the deed?" and he said, "I will promise you that and write it in the deed." She testified that with that understanding and promise she consented to make the deed. The conversation was not in the presence of her husband and did not relate to any matter of which she acquired knowledge from the existence of the marriage relation. This testimony, if true, showed that Ernest consented and agreed to release his expectancy in consideration of the conveyance. Ernest testified that he did not make the statement attributed to him by his mother nor a statement like that. Her testimony seems to us more reasonable in view of the circumstances. The parties were having a family settlement and Ernest had come home for that purpose. The Livingston county land was worth somewhat more per acre than the Indiana land, but Ernest was receiving a present conveyance in fee, and the scheme of the father, as shown by the draft of the will, did not give to the daughter any advantage over the son. The contract alleged was clear and unambiguous in its terms and we think it was satisfactorily proved. Frank W. Mires made two or three wills but it seems died intestate. The testimony of Louise F. Mires was entirely consistent with the scheme shown by the draft of the will made at the time and appears reasonable. The original bill, which was filed before the settlement of the estate, alleged that Louise F. Mires, the administratrix, had in her hands personal property sufficient to pay the debts of the estate with the exception of $2450 of her award, which was a claim against the estate, and asked that any necessary amount be set aside in case of a sale for the payment of claims or charged upon the estate in case of partition. Ernest had executed a trust deed upon his interest as an heir of his father to secure $1725, and it was agreed that the trust deed was a lien upon the lands. The controversy, of course, is to be decided upon the evidence of what was done and agreed to

at the time the deed of the Indiana land was made, and we think the evidence showed 'that Ernest C. Mires released his expectancy in his father's estate.

The decree is reversed and the cause is remanded to the circuit court, with directions to dismiss the original bill and grant the relief prayed for in the cross-bill.

*Reversed and remanded, with directions.*