Judge Robertson
delivered the opinion of the Court.
Joseph Middleton obtained a judgment, in the Jefferson circuit court, against ffm. C. Hobbs, as administrator of Peter Woolford, in a petition and summons on the following note. “Due Doctor Joseph Middleton or his assigns, the sum of one hundred and sixty seven dollars and sixty-two and a half cents specie, it being the amount of his medical account, against-the estate of Peter Woolford deceased. Witnesss my band, this 14th day of June, 1825.
W. C.- HOBBS, Administrator.”
5—— -—- ¿farátün
.Demurer,; , de en an s°
judgmrkfor plaintiff,
Declaratiori sustained,
The execution on this judgment was returned, “nulla bonaMiddleton then brought an action of debt against. Hobbs, with a suggestion of a “devasta7¡it;” and haying obtained a judgment by default, issued an execution “de bonis propriis,” which was returned “no propertywhereupon this siiit was brought on the administration bond, in the naihe of the commonwealth for the benefit of Middleton, against Hobbs, and Chu^ chill and Buckner; his securities.
The declaration, after reciting the note and two judgments, exécuíions and returns aforesaid, makes proferí of k copy of the administration bond, and avers in súbstanée, á súíficiency of assets, át the date of the note, and h waste of them by the administrator, to which a demurrer and four pleas were filed; the first plea, is by Hobbs, and alleges only, that a former judgment had been obtained against him which was in full force; the second is by the securities, and fivers that the note was for Hobbs’s individual debí» and was executed by him fraudulently, to make the assets liable for its payment. To each of these pleas a joint demurrer was filed, which thé court sustained ás to the first; but Overruled ás to thé second. Issues v^as then taken on the second plea. The third plea is by the securities, and is, in substance “no assets,” and that the judgment was obtained against Hobbs, by his fraud and negligence; a demurrer to this Was sustained; and issue td the court wds taken to the fourth; which was a plea of nul iiel record;
Judgment ivas dbtáined against Hobbs and Chirrchill, the suit having abated as to Buckner; various errors are assigned; but it is h'ot deemed néfcéssáry to notice them specifically;
The declaration is substantially good; it contains on a reasonable construction, all the facts nécessary to shew a good cause of action. The suit is maintainable against the securities and principal jointly.
Whether a recent opinion of the late judges Bibb and Owsley, from which judge Mills dissented, deciding that two judgments against the administrator; o.ne establishing the debt, and the other fixing á .■devastavit, are necessary before the security can by’ *178 sued, shall he considered as the settled law or not, *s immaterial in the consideration of this question. We shall however notice that Opinion presently.
Upon a joint and several bond, either one or all the obligors must be sued. The responsibility of principal and securities in an administration bond is the same.
Convicting administrator of ‘devastavit, does not release him from his liability upon his bond; it only determines the extent of responsiblity, and binds him personally, as well as in his fiduciary character.
The two judgments required by that opinion, had been obtained against the administrator in this case, before this suit was instituted.
We cannot doubt that it was proper to sue, as well the administrator,' as his securities on the official bond. The bond being joint and several, either all, or only-one should have been sued on it. The administrator had never been sued on the bond before. He was not liable to suit on it sooner, or for any other cause, or to any greater extent, than the securities were. They are responsible on their bond, whenever he is; and when he is not, they are not; and consequently, when they are not, he is not. When the principal is not liable to a suit on his bond, his security certainly cannot' be sued on it. A bond by principal and securities, on which the latter could alone be sued, would be an anomaly. If the judgment for a devastavit, against the administrator, exempt him from suit on his bond, it equally and for the same reason, would absolve his securities. The principal may be sued alone for a devastavit
This does not extinguish his liability on his bond., according to the decision referred to, it is necessary to fix his liability on his bond. For if the devastavit be essential to the liability of the securities on their bond,it must be equally so to that of their principal and coobligor, on the same bond.
Fixing a devastavit on the administrator, does not release him from the obligation of his official bond. If only establishes his accountability more clearly, and makes it personal as well as fiducial.
It was therefore right to sue the administrator with' the securities, and of course the former judgments-against him constitute no bar, and consequently Hobbs’s plea was immaterial.
It was not strictly, regular to lile a joint demurrer to the plea of Hobbs, and to one of those offered by the' securities. But this irregularity, can have no material effect now; nor should it have been considered *179 material, when it occurred, as the plea of Hobbs was virtually no plea at all, and needed not to be noticed.
judgment against ad^‘“¿judea the gecur¡ties, as to the nature °íat¿¿.de~ ’
whether the debt was personal, or questioned in a suit o¡aTbond°ffi" unless fraud be alleged creditor^
^“«•e—Wbeóhanoery^bn not the appropriate, if not tlie only remedy?
The second plea filed by the securities, was also improper. It was, that the debt for which the judgment had been rendered against the administrator, •was not that of the administrator, but of Hobbs, individually.' The responsibility of securities being incidental and collatteral to that of the principal, a judgment in favor of a creditor, against the administrator, concludes the securities, as to the existence and character of the debt thus ascertained, and cannot be questioned or reviewed in a suit on the official bond. As the judgment was against Hobbs as administrator, the securities therefore could not deny that he owed it as administrator.
But if the securities were not estopped from gainsaying the truth of the judgment, there would be another objection in this case, to the sufficiency of the defence attempted in their second plea. The note on which the judgment was rendered, was executed by Hobbs as a fiduciary, and expresses the consideration to have been a debt due by his intestate. Hobbs cóuld therefore have escaped the payment of it, by sustaining plea of no assets, or plena administrmit; 1 Saunders, 210, and N. 2, 211. Roberts on Frauds, 206. But if Hobbs had been personally liable, he was also responsible as administrator, and therefore the securities are also hound eventually by their bond, and after two judgments against the administrator, cannot plead that the debt was not that of Hobbs as administrator, unless they impeach the judgments for fraud by the- créd-, itor in obtaining them. The plea does not charge any fraud on the creditor. And surely a fraud by the administrator alanq* cannot release from the claims of his creditors, the. securities in his official bond, given for his faithful and upright administration.
Even if the creditor had obtained his judgments by fraud, it is worthy of consideration, whether the only remedy for the securities, would not be a bill in chancery, to avoid the legal effect of them, J & • '
We have been unable to detect any error in the opinion of the court on the plea pf %wi tid record.
a plea con i tain a suffi: cient answer to the pl’tff’s declaration, aild is intelligible! wiin t of form does pot vitiate.
JBevaslavit fixed upon the principal estops him from pleading no assets. The object of the suit to estab: lish waste of assets, and to charge him personally;
To maintain an action against ex’r or adm’r for devastavit, the demand must be ascertained by judgment, and delinquency shown by return of nulla bona.
*180 But the court erred in sustaining the demurrer t® the third plea of the security. This was intended to be a plea denying that assets had come to the hand^ of the administrator. . It is confused, .and unskilfully drawn; but being intelligible, its informality should not be fatal to it, when it is tested by the. liberal rules of practice, which have long since prevailed in Kentucky.
Whether a security for an executor or administrator can plead no assets or plene administravit, after a devastavit fixed on the principal by judgment, is, as far as we know, a new question in Kentucky. We have not seen any direct decision on this point; but we have no doubt, that the security is not estopped by the devastavit on the principal.
By the tenor of the bond, and on principles of reason and of common law, the liability of the principal and. his security on their joint bond, would be co-ex, tensive and commensurable. And if there had been no statutory enactment on this subject, there could be no doubt that a judgment for a devastavit, against the principal would, as to assets conclude the security. It certainly is conclusive on the principal, and estops him from afterwards denying assets; for the only object of the suitsuggeslinga devastavit, is to ascertain and establish the fact of a waste of assets.; and therefore whenever a judgment for devastavit is rendered against an executor or administrator, he can never be relieved, by averring and proving, no* assets or full administration. if he could, suits against him, to enforce his personal liability, might be interminable, For if one judgment, fixing a devastavit would not bind him, and convict him of waste, no greater number of judgments could deprive, him of right to. relief for want of assets. Hence, after a judgment establishing a devastavit, he eannot escape individual, responsibility. The action of debt suggesting a devastavit, is brought against the executor or administrator, not in his representative character, but in his own right, and the judgment is conclusive against him; Worsham vs. M‘Kensie; 1 Henning and Munford, 342.
Before a creditor can maintain a suit against an ex-executoyor administrator for a devastavit, his debt must be ascertained by judgment, and the delinquency of *181 the fiduciary, shewn by a return of uwlla bom” Without such judgment and return, it cannot appear that the personal representative has rendered himself personally liable. After such return of “nulla bona,” he could not deny assets, until he was permitted to do ?o by an apt of 1811. This act provides, that “in all suits agajnsf them (executors or administrators) on their bonds or otherwise for deyastavits” they may plead no assets, &c.
Practice in England.
Practice in Kentucky, prior to the act of 1811.
Effect of the act of 1811.
Before the passage of this act, executors and administrators were responsible, de bonis prppriis” on the return of nulla bona on an execution pn the first judgment of the creditor.
In England the execution on this first judgment of a creditor, was .“a scire facias, de bonis testatoris, fyc., et si non, de bonis propriis ;” on which the sheriff might return either “nulla boned’ or “devastavit.” On the former return, the creditor proceeded by a scire fieri enquiry, or action of debt, suggesting a devastavit; on the latter he might have “a fieri facias, de bonis propriis,” and it was immaterial whether there were assets or not.
The practice in this country, had been, to bring an actipn óf debt, with suggestion of waste, on the return of Uv,ulla¡ bona;” and in such action, the defendant was not allowed to avail himself of a plea of no assets, or plene administravit,
The act of 1811, however, gives an executor pr administrator the right to be exempted from liability, by filing an appropriate plea to the action brought '•for a devastavit,” on his bond or otherwise.” But it gives him no further indulgence." It effects no other modifi. cation of the ancient doctrine which has been mentioned. It does not reserve to an executor or administrator, any right, after a devastavit fixed by suit, to exhonerate himself by plea of no assets. Neither the executor nor his security, can call in question the effect of a judgment by a creditor against the executor, establishing a debt. Nor could the security, on principle, or by analogy, have any more right than the principal, after a judgment for a devastavit against the latter, to deny the assets. Because, by his bond, he is *182 bound for the acts of the principal, co-extensively with his liability, and could not deny that there were assets, when his principal, by having virtually admitted them, had lost the right to gainsay their existence and sufficiency.
The act of 179.7, places securities upon a different ground from their principals.
After a devastavit fixed upon principal, the securities in an administration bond may plead no assets; tho’ the principal cannot.
But by the third section of the act of 1797, it is provided, in substance, that the securities of administrators and executors, shall not be made responsible beyond the amount of assets, by reason of any omission,, default, or mispleading, &c. of thejr principals.
This act is plain, and decisive. It cannot be misunderstood. It was framed for the purpose of relieving securities, from the extreme rigor of the former doctrine of the law, and of placing them, as it was right to place them, on ground different from that which their principals, by their delinquencies, might be forced to occupy. Although the principals were still personally liable, on a return of “nulla bona, the securities were relieved from responsibility, to any greater extent than the amount of assets received and retained, or wasted. In a suit then, on the official bond, against an executor and his securities, for a devastavit, the latter could escape by shewing no assets, or a faithful administration of them, while the former was doomed to individual liability, before 1811, whether there were assets or-not. Since 1811, in a suit on the bond, for a devastavit, both the principal and his securities may be protected, by shewing that there were no assets.
But a suit may be brought for a devastavit, either on the bond or without it. And an action of debt, suggesting a devastavit, is usually brought against the principal alone, without noticing his bond. Such, was the course in this case. By the judgment fixing a devastavit in such a suit, the defendant is concluded, as to the question of assets; and if a suit be afterwards (as was done in this case) instituted on the bond, against the principal and securities, the latter can certainly avail themselves of the third section of the act of 1797, and plead no assets, orplem administravit, as the case may be.
They have a right to make this defence whenever they are sued; and this right cannot be destroyed or impaired, by the fraud or negligence of the principal, *183 In omitting to plead, or on mispleading. Such a delinquency by the principal, is the reason and only one, why the statute has extended the protecting privilege to the security. Whatever may be the condition the principal therefore, or whatever he may have done or omitted to do, his security, whenever sued on his bond, may shield himself by shewing, either that there had been no assets, or that they had been fully administered. If he have not this right, the third section of the act of 1797, is a nullity, and can have no operation. To give it a practical and beneficial effect, it must be construed to extend to the security, this right; a right which his principal had not, after are-turn of “nulla bona,” until 1811, and has not even now, after a judgment fixing a devastavit. Without the acts of 1811 and 1797, both the principal and his security would be concluded by a return of ilnulla bona.” By the act of 1811, the principal is protected, until after a .judgment fixing a devastavit on him, but is concluded by such a judgment. By the act of 1797, the security is never estopped, until after a judgment shall be obtained against him.
By the act of curUy^spro" tected from the effects of &devastami-
^*}® principle the case of Clark vs 5 ru]ed. To81" maintain an action againat the sureties in an administration bond, it is not necessary there Should be a judgment of devastavit against the principal.
*183 When he is sued on his bond, he may plead under the third section of the act of 1797, although a devastavit may have been established on the principal, by a judgment»
That the security cannot be concluded by a devastavit fixed on his principal, must be the effect, and the. only one contemplated by the third section of the act of 1797, and should be considered indisputable. And this is clearly intimated, by a recent opinion of the late judges of this court. But that opinion, (written by the late judge Bibb,) asserts, as before stated, that two judgments against the principal, one establshing the debt of a creditor, and the other fixing a devastavit on the representative, are indispensable to the maintenance of a suit against the security.
It may not be necessary that we should, in this case» review this opinion. Jbut as we believe, alter acareful examination of it, that it cannot be sustained, if sustainable at all, on any other hypothesis* than that the judgment for a devastavit against the principal, is like that ascertaining the creditor’s debt, conclusive on *184 the Security* although the opinion itself, intimates the contrary; we therefore suppose, that it is proper that we should offer some reasons for our dissent from the main doctrine contained in it, and for our concurrence with the assistent judge (Mills.)
Brantoifvs Winston ' i’ Wash. 31; & Fretfer" Justices*- l Munfofd; & the case of Hendly^s Bíonroe* 99 criticised: the judge°Milf)s, the dissentent judge,- suffamed.
Whether two judgments against the principal, must be obtained before his security can be suéd, had remained Undecided in Kentucky, until the opinion, drawn by judge Bibb, whs delivered. This opinion Seems to have resulted solely from an afcquiesence in. the supposed authority bf some Virginia cases. The principal cases relied on, are Braxton vs. Winslow, 1 Washington, 31, and Gordon’s administrators vs. the Frederick Justices, 1 Munford, 1.
The case in Washington, is the first which can be on subject. The opinion in that case,- was delivered by judge Bendleton, who, after deciding the only point, which he had a right to adjudicate on, to-* w'*-: Whether a creditor could maintain a suit bn the official bond, against the principal and securities, be-* fore his demand had been ascertained, by a judgment against the principal, proceeded to state extra j.udicially, that the securities nót Ónly dould nót be súbjected tó súit, befóte one judgment against their principal, but that a second judgment fora devastavit was necessary, to fix their liability. The authority of this obiter dictum, was questioned in Virginia, „for many years, Some of the ablest members of the Virginia bar,' denounced i t as irrational and absurd j and it never was definitively recognized.until 1810, when it Was sealed with the authority of the ease of Gordon vs. the Frederick Justices. The'opinion in this last case,- is evidently an inconsiderate acquiescence in the suggestion" of Pendleton, and is not so much a deduction of rea-' son, as it is an unreflecting homage, to the memory of a venerated jurist... No satisfactory reason is given, by either judge Pendleton or his successors* in 1810, for the doctrine which, on their authority, judges Bibb and Owsley have sustained. Although we fé'éí great res-" pect for the pre-eminent attainments which crowned judge Pendleton with the first legal honors of his day, We cannot admit that this hasty dictamen óf hi's, ig Entitled to the force of controlling authority, wlién it *185 is sustained by no known principle of law, and is inconsistent (as it seems to us) with all analogy and all reason, Nor can the subsequent recognitions by the court of appeals of Virginia, and a majority of that of Kentucky, in the cases before mentioned, enforce on us, against our own undoubting convictions, this extraordinary doctrine; for they aré but the echoes of Pendleton’s opinion, and extorted by the authority of his name.
The object of f”r,8d“o„¿oí and the riature of the undertaking; an(1 ^here \i-able:
The opinión dissented from, by judge Mills, ought not therefore, under all the circumstances, to be decisively authoritative; and concurring with him as we do, that this opinion does not give the true exposition of the law, or the reason of the law, we do not hesitate to declare our own sentiments. In doing this, we shall not be much embarrassed by the maxim “stare decisis et nón quieta movere.” For we do not consider it ÚS applicable to such a question, as that now under consideration, and to siich decisions as those which havé been rendered upon it.
The bond of an administrator is intended to secure a faithful and legal administration, for the benefit of creditors and distributees; and the securities; among other things, undertake jointly with the administrator, that he shall well and truly administer the chattels, &c. aqcording to law; and that after paying all just debts,, he shall distribute the residuufh among those who shall be entitled to it. Whenever it is ascertained that the administrator has failed to fulfil this undertaking, the condition of the bond is forfeited, and he and his securities are liable to shit. This is ascertain^ ed in the case of a creditor, as soon a's an execution on a judgment in his favor, for debt due by the intestate, shall have been returned “nulla bona.” Such judgment and return are necessary, because the administrator is not bound to pay the creditor, until his debt has been establishéd by judgment, and cannot be charged with default, until an execution has issued against the estate of the intestate, and he has failed to appropriate the assets to its satisfaction. But whenever he fails o'r refuses to satisfy the execution, he is certainly ipso facto guilty of a breach of his official bond, and may be proceeded against personally. And *186 it seems to us a self-evident proposition, that whenever the administrator may be sued in his individual character, that suit can be brought on his bond. This is expressly maintained by the Virginia cases, and particularly that of “the Amelia Justices vs. Brooking,” 3 Munford, 549. There is no room left for doubt, on this point, when the act of 1811 is examined. Judge Bibb has inadvertantly misquoted this act, when he uses the. phrasé “in any suit on his bond, or for a devastavit.” The expressions of the act are “in all suits ■against executors, &c. on their bonds or otherwise, for 'devastavits, 8/c.n This difference betweeh the act and the misquotation from it, by judge Bibb, is very material, and Of itself; should bé sufficient to show that the opinion drawn by him, is indefensible. Without the expressions erroneously quoted by him, it seems lo us that the opinion would never have been rendered. It evidently presupposes that the suit fot á devastavit? which it requires against the administrator, cannot be brought on his bond; and that the bond is never forfeited before a devastavit fixed by judgment on the adVninistrator. And this error could have resulted only from the radical mistake which was made in copying the extract from the act of 1811.
An ojc’r. or atim’r. may be sued for a devastavit, on bis official bond.
When the •principal in a joint and several'obligation is lia ble to'be sued, al his 'securities are.
But the tenor of the official bond; all the analogies that can be imagined, the express letter of the statute and the authority of the Virginia court of appeals, undeniably prove, that an administrator or executor, may be sued for a devastavit on his bond.
A question then arises, which must he decisive.- It is this: Whenever the principal, in a joint and several bond, is liable to suit ppon it, are not his securities in the same bond, also liable? We think théy are.
If there have been no forfeiture of the condition? the principal is not subject to suit on his bond. The instant there has been a forfeiture of the conditions, the securities are liable. The obligation of all the obligors is precisely the same; their contract is the same; their responsibility is equal, and occurs at the same time, and co-exists Until all of them are released. A joint bond, on which one of the obligors might be sued, and the others could not be, would be a nondescript unknown to the law? and never yet seen or *187 beard of. No obligor can be sued on his bond, until there has been a breach of it; and whenever there is a breach, all the joint obligors are responsible.
The very object of requiring security in a bond of any kind, is to render them liable with the principal, and to the same extent, as that to which he is bound. For a breach of a joint and several obligation, suit may be brought either against all the obligors, or any one of them. The principal obligors may be sued alone, or either of the securities may be alone sued, or all the obligors may be sued. No one of them is liable to suit, sooner than another; and all of them are liable for the same reason, and at the same instant. Why is the principal subject to suit on his bond? Because there has been a breach of the bond. For what are his securities responsible? A breach of the bond by the principal. When are they liable? Whenever the breach occurs. The principal cannot be sued before a breach. If, therefore, (as is beyond a doubt) an administrator or executor, can be sued on his official bond, as soon as linulla bona” shall have been returned on an execution against him, his securities may be made defendants to the same action. If there be any right of action on the bond, it must be entire, and will be legal, unless the legal remedy, by accident, is rendered ineffectual.
In the cases of Taliaferro, &c. vs. Gaines, reported by Call; Clark vs. Webb, &c. 2 H. and Md., 9, and Spotswood vs. Dandridge, &c., 4 Munford, 289, it is decided, that a suit in chancery may be maintained against an executor and his securities, on their bond, before a devastavit is fixed on the executor by judgment.. As the obligation of the bond is purely legal, we are at a loss to perceive why a suit at law, may not be brought on it, as soon as any liability attaches to it, A bill would lie on the bond, only on the supposition, that there had been a breach by. the executor; and surely for this, an action at law can be brought against him and his securities. The principle of these decisions is irreconcilable with the dictum, in Braxton vs. Winslow.
Perhaps we have said too much already on this subject. It is (in opr opinion) one of those propositions *188 which are intrinsically go plain, as to render argument unnecessary for their elucidation. But the ppinipns to which we have referred, require further nptice.
The judgment establishing devastavit against the adm’.r. orex’r. floes liot conclude the securities; they can still plead no assets; or plcne administravit.
We have been unable to discover any good reason for requiring two judgments against an administrator, or executor, before a suit can be brought against bis securities. Such a requisition is not made in any other class of analogous cases. The terms of the official bond d<^not exact it; the statute does not countenaceit, and it is not justified by any principle of justice or policy. It would lead to many absurdities and inconveniences, and would produce delays, and a circuity and expense, inconsistent with private right and the genius of our jurisprudence. ’
It is evident, that the second judgment against the principal, establishing a devastavit, cannot be used against his securities as evidence of a waste of assets, They may still plead no assets, or plena administravil. The only reason intimated by judge Pendleton, for requiring the second judgment against the principal, seems to be, as far as any reason can be inferred, that the securities are not responsible, until there has been a devastavit judicially ascertained against their principal, because until then, there is no sufficient proof of his delinquency: and consequently, that when so ascertained, it shall, like the first judgment for the debt, be conclusive on the securities, as well as the principal. If it shall not have this effect, it can have none on the securities, and therefore as to them, is immaterial. There is no semblance of plausibility in the doctrine which requires the second judgment against the principal, unlesss that judgment, when obtained, shall be proof against the securities, of a waste of assets by the principal. For if, notwithstanding such second judgment, which is conclusive on the principal, the securities may controvert it, and escape by proof of its falsehood, it has no effect except on the principal; and therefore, can neither create, nor prove.the liability of the securities,and consequently cannot be necessary for the institution or maintenance of a suit against them. As it is a general' rule, that whatever concludes the principal, is equally effective on his security, thejudgrnent for a devastavit against the principal, as it estops *189 him from denying assets, would have the same effect on the security, if the third section of the act of 1.797, had not been enacted. But even then, we cannot perceive any sufficient reason why, although the second judgment against the principal, would be conclusive 'also on the security, it should be necessary that two judgments should be rendered against the former, for the purpose of binding the latter, without giving him the right of defence, by making him a de«. fendant; such a doctrine would virtually disfranchise securities. For if the second judgment against tbei& principal be necessary as evidence against them of hia devastavit, that judgment must of course be conclusive against them; and thus they would be bound by the fraud or negligence of their principal, without an opportunity to resist the effect of a judgment against him, which, wh.en obtained, binds them, and cannot be controverted by them.
Effect of 3d section of the act of 1797; Lit. Statutes.
Operation of the return of nulla bona, influenced & controleil by the statutes of 1797 and ,811. It is such evidence of breach of conditions of the bond, as entitles a creditor to an action on the bond, against principal and securitie, or against any one of them,
*189 The Virginia decisions .on this question never could have been rendered, (as is manifest by an inspection of them) unless it had been supposed that the judgment fixing a devastavit on the principal, would be conclusive against the securities. And it would be so, with-o.u the 3d section of the act of 1797.
■ Those who have adopted the dictum in Braxton vs. Winslow, cannot have noticed or sufficiently considered the language and effect of this section. Since this enactment, no number of judgments against the principal, can be evidence against the security, when he shall be sued; and he may under any circumstances exhonerate himself, by pleading and shewing whenever he may be sued, a want of assets. The return of “nulla bona” on the execqtor, on the first judgment of the creditor, is as much evidence against the security of a devastavit by the principal, as the second or any greater number of judgments can ever be.
The law requires executors and administrators to pay the debts. One of the conditions of their bond is, that they will, well and truly administer the goods &c. according to law* A failure to pay a debt when properly ascertained and authenticated, by a judgment, and demanded by an executionsis a breach pf this *190 condition. This is now not controverted, so far as we know or believe, in England or America. The return of “nulla bona” before our statute of 1811, was con* elusive evidence against the executor or administrator of a devastavit, and without that of 1797, would have been equally effectual on his securities. He may now-escape the effect of such return, by shewing a full administration, at any time before a judgment for a devastavit, and his securities may save themselves by such plea, in any suit against them, whenever or however brought. But surely these statutory indulgencies, cannot have the magic effect of preventing a creditor from sueing on the official bond, on the return of no property. This return is still prima facie evidence of a breach of the condition, “well and truly to. administer according to law,” and authorizes aproceeding against the principal, and consequently his securL ties on their bond. If, because it is not incontrovertible, evidence of a devastavit, it would not justify a suit on. the bond against the securities; such suit can never be. brought against them, because no judgment whatever, against the principal, cap be conclusive evidence, against the securities.
It is admitted by the Virginia cases, that unulla bona,” is evidence of a devastavit; but they insist, that if; is not sufficient evidence against the security. What then will be sufficient evidence? Not a second judgment against the principal. The return is as much evidence against the securities as it can be against the principal; and will authorize a suit against them all, on their bond, for it is evidence of a breach, until the contrary be shewn. And such is the law as settled by the supreme court of New York, in ‘the People vs. Dunlap; 13 Johnson, 441.’ The condition of the bonds of executors and administrators in New Fork, so far as creditors are concerned, is precisely the same, as that contained in the bonds in Virginia and Kentucky; nevertheless, the court of New York, seem to consider it perfectly clear, that on the return of Unulla bona,”' 3 suit may be brought on the official bond, against the principal and his securities. We cannot believe that this could ever have been questioned, if judge Pendleton, had never made, the hasty obiter suggestion in Braxton, vs. Winslow.
The absurdities resulting from the contrary doctriif®
The opinion written by judge Bibb, seé'ms to admit that the security cannot be prejudiced by a judgment fora devastavit against his principal, while it adopts the ■dictum of Pendleton, which this admission strips of all semblance of reason.
If the creditor mean to sue the securities, or if the insolvency of the principal shall shew, that the debt inust be eventually made out of them, why should the second suit bé prosecuted against the insolvent principal alone? It can have no effect on him; it can 'have none whatsoever on the securities. Why shall the creditor be unnecessarily postponed? Why shall he bé compelled to -prosecute a suit which can have nó practical effect, and produce no possible benefit to him, or to others.
After two unavailing judgments against the principal, one against the assets and the other against his own estate, it certainly could not b'e necessary to sue him again. If the second suit be brought, as it may be, on the official bond, no further suit could be maintained on it against the principal. He could plead the former judgment on it. Then could the creditor sue all the securities, if there are more than one? or must he, as it Is a joint and several bond, sue only one at á time. He cannot bring a joint action against all the obligors, because the former judgment against the principal, would absolve him from any further suit on his bond. This is our opinion; but it is not necessary to decide this point definitively.
The doctrine which we have been combating, might in practice, lead to the strange consequence, of compelling a creditor to bring separate successive suits on a joint obligation, executed for his benefit by several; or it would at least present the phenomenon, of one defendant, being precluded from making any defence toa joint action, to which action, all the others may plead successfully. For the administrator, in his third suit, could not deny assets; and his securities, it being their first, certainly coulds If therefore, he never had assets, or had fully administered, a judgment for the third time must be rendered against him, and no judgmentatallcan ever be obtained against his securities; .-jf they make proper defence.
Honolusion of .the c.ourt and es meat.
Denny, for plaintiff; Crittenden, for defendant.
Many Óther absurdities may result from a doctrine, attempted to be established “jurare magistri,” without any consistent reason, contrary to the decisions of states, and against every analogy of the law which can be shewn in the world.
These incongruities and perplexities, can all be avoided by suffering the creditor, as soon as his execution on his first judgment shall be returned “nulla bo~ n«,” to sue the administrator, and his securities on their bond; either jointly or severally, as tie may choose to do. And this we feel very shre is his right. No law has taken it from him; there is no reason for making such a case an exception from all others that ever éxlsíed, or can be imagined: and there is nothing which gives countenance to such unreasonable exception, but- tiie judicial legislation of judge Pendleton. This at least is our opinion, and we must act according to it.
The principal views which we have taken of this subject, are such as judge Mills, in his dissent did not deem necessary; to sustain his árgurhbnt. That argumen(¡ ¡s very cogent. But if Wé weré uninstructed by if, the considerations which wé have suggested, would be satisfactory to us. It was not necessary, that we Should recapitulate all the arguments, already published by another.
. We therefore feel fconstrained to disagree with judges Bibb and Owsly, and to decide that two judgments against an administrator or executor, áre not necessary, before a suit can be brought against him and his securities, on the official bond. And’ it seems to us, that although three suits may be brought, only two, would be much better. But whatever may be the true doctrine, on this subject, we have nó' doubt, that the security when sued, can plaid no assets, or plene administra%it, and is not concluded by any number of judgments against his principal.
For sustaining the demurrer to the third plea of the security, therefore, in this case, the judgment is reversed, and the cause remanded for further proceedings, consistent with this opinion.