(86 App. Div. 464.)

### HUNT v. OSBORN et al.

(Supreme Court, Appellate Division, Second Department. July 24, 1903.)

1. BANKRUPTCY—RIGHTS OF TRUSTEE—CONTRACT—CONSTRUCTION BY BANKRUPT.
    A woman whose sons were members of a firm guarantied the payment of any debt owing to the firm by either of the sons, to the extent of the interest they might have in her estate at her death. Her will devised her property to the sons equally, and one of the sons, who was indebted to the firm, subsequently became executor, and, while the firm was solvent,

made a sworn inventory as executor to the effect that he owed the estate the sum which he was indebted to the firm, and such sum was credited to him on the books of the firm and charged to testatrix's interest therein. Thereafter the trustee in bankruptcy of the son who had been indebted to the firm sought to recover from testatrix's estate on the theory that testatrix had intended to disregard the advances made to the son under the guaranty, and intended to make an equal division of her estate after the satisfaction of the guaranty. *Held*, that, inasmuch as a trustee in bankruptcy has no greater rights than the bankrupt would have had, and in view of the construction placed on the transactions by the bankrupt himself, the trustee could not recover.

**2. WILLS—CONSTRUCTION.**

A woman whose sons constituted a firm guarantied the payment of any amount owing it by any of the sons "only to the extent of their separate interest they may have in my estate in accordance with my will," and in a will made subsequently she provided that "each of my children shall be charged to the extent of their interest that they may respectively have in my estate with whatever sums of money shall appear to have been advanced to them." *Held*, that testatrix did not mean to disregard any advances made under the provisions of the guaranty, and to make an equal division after satisfaction of the guaranty, but meant that any sum for which there was liability under the guaranty on behalf of any of the sons should be deducted from his share.

Appeal from Judgment on Report of Referee.

Action by Leavitt J. Hunt, as trustee in bankruptcy of the estate of Robert A. Osborn, against Charles S. Osborn and others. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, and HOOKER, JJ.

William D. Gaillard (Charles Capron Marsh and Daniel De Wolf Wever, on the brief), for appellant.

William B. Davenport (A. A. Gardner, on the brief), for respondent Mary E. Polak.

William G. Cooke, for respondents Howard J. M. Cardeza and others.

WOODWARD, J. The plaintiff, Leavitt J. Hunt, is a trustee in bankruptcy of the estate of Robert A. Osborn, bankrupt, and seeks in this action an accounting on the part of the executors of the will of the late Mary C. Osborn, and to reach certain property alleged to belong to the estate of the bankrupt. Mary C. Osborn was a special partner in the firm of John Osborn, Son & Co., with an investment of $100,000, which partnership expired by limitation on December 31, 1887. The active partners in the firm were her sons, Frank, Charles, William, and Robert A. Osborn. Just prior to the expiration of this partnership, and on the 19th day of December, 1887, Mrs. Osborn wrote a letter to her son Frank, in response to letters from him, in which she stated that she was willing to and would give to John Osborn, Son & Co. an instrument in writing guarantying the payment of any indebtedness that may be incurred during the limitation of the partnership, or which might then be owing the firm by either Charles, William, or Robert; but this was to be "only to the extent of their separate interest they may have in my estate at my death in accordance with my will, which I intend to execute at the

earliest moment possible." The letter contained other matters relating to the details, and the evidence shows that an instrument in writing was subsequently executed and delivered to the firm in terms substantially as indicated in this letter, though this instrument had been lost or consumed by a fire, which occurred in the office of the firm, which was under the active management of Frank Osborn. With affairs in this condition, a new firm was organized, consisting of the same persons as the previous one, and to continue from January 1, 1888, to December 31, 1892. Subsequently, and on the 7th day of June, 1890, Mrs. Osborn made and published her last will and testament, in which her son Frank was made executor, and in the event of his death the will provided that her sons Charles, William, and Robert, and her daughter, Mary E. Polak, should assume the office of executors. The testatrix, Mary C. Osborn, died December 28, 1891, and Frank Osborn entered upon the discharge of his duties as executor. It was found that, after crediting Robert A. Osborn with all of the profits of the firm to which he was entitled, he had overdrawn his account $22,050.65, and this amount, under the terms of Mrs. Osborn's guaranty, was charged against her capital in the firm, and credited to the account of Robert A. Osborn upon the books of the concern. Frank Osborn died on the 13th day of March, 1892, and was immediately succeeded by Charles, William, and Robert A. Osborn and Mary E. Polak as executors, who, without any intermediate accounting, took up the management of the estate where it had been left off by their brother. These new executors, including Robert A. Osborn, on the 15th day of June, 1892, made a sworn inventory of the assets belonging to Mary C. Osborn, deceased, including a declaration subscribed and sworn to by said Robert A. Osborn, that, as of the date of December 31, 1891, he owed to said estate both the sum of $22,050.65 (paid to the firm of John Osborn, Son & Co. for his indebtedness) and also the sum of $11,850, advanced by his mother to him. At this time the firm of John Osborn, Son & Co. was solvent, and it remained in existence until the expiration of its contractual limitation in December, 1892, at which time it was succeeded by a new firm under the old name, consisting of Charles, William, and Robert A. Osborn, which continued the business, and failed in May, 1895. While the firm was still solvent, so far as appears from the evidence, Robert A. Osborn recognized the existence of this indebtedness, and made payments upon account of the principal and interest at various dates; and the practical construction put upon the agreement, and the action of the parties in interest, while they were at liberty to deal with the matter independently of the rights of any creditors, in the absence of fraud, would seem to be conclusive upon the rights of the plaintiff in this action, who appears in behalf of creditors under a proceeding in bankruptcy, long after the adjustment of the affairs of the estate, except in the distribution of about $34,000 now in the hands of the executors. The learned referee to whom the matter was referred for trial has found in favor of the defendants, and his report has been confirmed by the court, the plaintiff appealing.

83 N.Y.S.—56

A trustee in bankruptcy, except in some special statutory matters, not involved here, takes no greater estate than that of the bankrupt. He has no rights which the bankrupt himself would not have in the present case were he solvent, and in control of his own affairs. It is not alleged, or suggested, that there was anything fraudulent in the transaction, but the theory of the plaintiff is that Mary C. Osborn, in making a will, and in providing for an equal distribution of her property among her children and the descendants of a deceased son, elected to disregard the advances made to Robert A. Osborn under the provisions of the guaranty agreement, and that she intended to make an equal division of what remained after the payment of such obligations out of her estate, instead of deducting the amount out of the portion to be paid to Robert A. Osborn, as was done by the original executor, and as was subsequently ratified and approved by the said Robert A. Osborn at a time when he was not only free to act in the premises as he saw fit, but at a time when it was his duty to know the contents of the will and all of the facts relating to the estate. Robert A. Osborn was one of the executors of the will of his mother. It was his duty to know the contents of her will and the assets of her estate, and the law presumes that he has discharged this duty. Having the opportunity of knowing the contents of the will and presumptively knowing it, having a direct interest in having the will construed so as to relieve him of the payment of over $22,000, Robert A. Osborn, at a time when his firm was entirely solvent, and in the discharge of his duty as an executor, swears that he owes the estate of his mother this sum of money, and his trustee in a voluntary bankruptcy proceeding, years afterward, and without any suggestion that any one has acted fraudulently in the matter, comes into a court of equity and claims the right to question the construction of the will and the understanding between the parties, and to take from the remaining residuary legatees the money now in the hands of the executors, and which, under the original interpretation of the will, belongs to them, and to turn the same over to the creditors of Robert A. Osborn. We are persuaded that neither equity nor the law requires that this be done, and that the learned referee and the court below have properly disposed of this case. Assuming that the will of the late Mary C. Osborn contemplated that her estate should be charged with the overdraft of Robert A. Osborn, and that he should be forgiven this amount, and be permitted to share equally with his brothers and sisters, can there be any doubt that he had a right in 1892 to acknowledge such an indebtedness to his mother's estate, and to accept an equal distribution of the same after making this allowance? There is no suggestion that he owed any one a single dollar at that time; and, if he had given the estate this amount of cash before the distribution, no one would have suggested that his subsequent creditors had any equitable right to reclaim any portion of the money. It is difficult to understand how they could have greater rights under the facts disclosed, for it is certain that a court of equity would not permit Robert A. Osborn to maintain this action to recover money or property which he had voluntarily paid or sur-

rendered, where he had a full opportunity, and where it was his duty, to know the facts.

But the will, read in connection with the guaranty agreement, and. in the light of the relationship of the parties, does not warrant the interpretation put upon it by the plaintiff. The agreement contemplated that the firm of John Osborn, Son & Co., of which Frank Osborn was the active manager, might advance money to the other brothers for their own purposes, and that this need not be limited to their profits, but might encroach upon their interests in their mother's estate as fixed in her will, which she was about to make. In the will which she did make she provided that "each of my children and their issue shall be charged to the extent of the interest that they may respectively have in my estate at the time of my death [which was the interest less the amount advanced under the guaranty agreement], with whatever sums of money shall appear by my books to have been advanced to them subsequently to June 1st, 1890, by me, or by the firm of John Osborn, Son & Co., at my request, together with the interest thereon, to the time of my death." While the language might have been clearer, we are of opinion that the intention was, not to adjust the estate as of the date of the will, but to fit it in with the contract of guaranty for the sums which the firm might have advanced up to the time of her death, and to provide for an equal distribution of the entire estate among her children and their descendants. This was the construction which all of the heirs accepted and acted upon for several years. It is the natural and logical construction from all of the facts and circumstances surrounding the parties, and, the whole matter having been adjusted and acquiesced in by Robert A. Osborn while acting as an executor under the will of his mother, and when there were no rights of creditors involved, we are clearly of opinion that a trustee in bankruptcy of the estate of Robert A. Osborn has no standing in a court of equity to overturn the adjustment and compel the other residuary legatees to contribute to the creditors of their brother.

The judgment appealed from should be affirmed, with costs. All concur.