(No. 15222.—Reversed and remanded.)
Charles W. Alward, Appellee, *vs.* Harriet J. Wood-
ard *et al.* Appellants.

*Opinion filed December 16, 1924—Rehearing denied Feb. 5, 1925.*

1. Wills—*party claiming under will must accept its provisions
as to advancements.* A legatee or devisee cannot take under a will
and at the same time dispute its provisions in regard to deductions
for advancements, as the will must be accepted in its entirety or
not at all, and one who sues for partition as devisee under a will
must accept its provision that any advances of money or property
received by a devisee prior to the testator's death shall be deducted
from the devisee's share in the estate.

2. Same—*prospective heir's expectancy may be released or as-
signed.* A prospective heir's expectancy may be released to the
ancestor or assigned to a stranger, and in case of release to the
ancestor a court of equity will enforce the contract for the bene-
fit of the other heirs against the heir releasing his expectancy.

3. Same—*parol agreement to take deed as an advancement in
lieu of share in estate is enforcible in equity.* Where a child ac-
cepts from his parents a deed for a tract of land and takes pos-
session of the land upon the express understanding and agreement
that it is in lieu of all claim that the child may have to the residue
of his parents' estate the agreement is binding upon him and en-
forcible in equity, and such contract, when completely executed,
although not witnessed in writing, is neither contrary to the Stat-
ute of Wills nor within the Statute of Frauds.

4. Same—*when the complainant suing for partition as co-heir is
not a competent witness as to contract releasing his expectancy.*
Where one brings a partition suit claiming as a co-heir and the
other heirs defend on the theory that the complainant's right to
inherit was extinguished by reason of a release of his expectancy,
the complainant is not a competent witness on the question whether
or not he by his contract released his expectancy, as the complain-
ant, until such defense is refuted, is regarded as a stranger to the
heirs' interests.

5. Same—*advancement may be applied to reduce amount of de-
vise—parol evidence.* While the term "advancement" is ordinarily
applied in the case of a parent dying intestate, where a testator ap-
plies the term to a gift or distribution to a prospective heir either
before or subsequent to the execution of his will and directs that

it shall be treated as an advancement and deducted from such child's share under the will, the terms of the will will be enforced against any such legatee or devisee claiming under the will, and the amount of the advancement may be ascertained by parol evidence.

6. SAME—*when advancement prior to making of will will be deducted from the legacy or devise.* A gift or advancement made prior to the making of the ancestor's will will be deducted from a legacy or devise where the will so directs or there is an agreement on the part of the beneficiary that the prior payment shall be applied to reducing the legacy or devise.

7. SAME—*what evidence is admissible to prove advancements by testator.* Where a testator provides that any advancements of money or property to a child shall be deducted from such child's share under his will, the will itself and parol evidence, including admissions of the legatee or devisee and declarations of the testator contemporaneous with the making of the gift, or subsequent verbal declarations to the child, which are assented to, may be offered in evidence to show what advancements are within the terms of the will and the amount thereof.

8. SAME—*what determines value of land given as advancement.* Where a testator provides that any property given as an advancement shall be deducted from the donee's share under the will, the value of land advanced, when not fixed by the will, is to be determined as of the date of taking possession as owner, although the advancement was made in parol and the deed to the land was not delivered until after possession was acquired.

9. SAME—*when devisees are competent witnesses on question of advancement in suit for partition.* In a suit for partition by a devisee, who the defendants (who are also devisees) claim was barred from his share by the acceptance of a deed as an advancement, the defendants are competent witnesses as to all relevant facts on the question whether or not the land was deeded as an advancement to the complainant, including any proper declarations of the testator in the presence of the complainant, as such testimony has no tendency to impair the estate and is not subject to the rule prohibiting the testimony of parties in interest when the parties are suing as heirs or devisees.

10. SAME—*purpose of the rule excluding voluntary testimony against heir or devisee.* The statutory rule excluding the voluntary testimony of a party in interest when an adverse party sues or defends as heir or devisee is intended to protect the estate from the assaults of strangers and relates to proceedings wherein the testimony of such parties would tend to impair the estate.

11. SAME—*Statute of Descent does not apply to advancements by testator.* The provisions of sections 4 to 8 of the Statute of Descent, concerning advancements, pertain only to intestate estates and do not apply to advancements which a testator has provided shall be considered as reducing a legacy or devise.

12. PARTITION—*when defendants are not barred of defense set up because they claim too much.* Where a will provides that any advancement shall operate to reduce the share of a devisee, defendants to a suit for partition by a devisee are not deprived of their right to set up the acceptance of an advancement as a defense because they claim it is a complete bar and not simply a partial defense.

APPEAL from the Circuit Court of Fulton county; the Hon. W. F. GRAHAM, Judge, presiding.

HARVEY H. ATHERTON, and GLENN RATCLIFF, for appellants.

BURNETT M. CHIPERFIELD, and CLAUDE E. CHIPERFIELD, for appellee.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

Benjamin Alward died testate in Fulton county on October 20, 1896, leaving him surviving Eliza Alward, his widow, to whom by the third clause of his will he gave for her natural life all of his property, except certain specific devises to his children, with full power to sell and dispose of and convey such parts of his real estate as she might deem necessary to carry out the provisions of his will, and she was named executrix without bond. He also left surviving him ten children: Harriet J. Alward (now Harriet J. Woodard) ; Eliza A. Alward, adjudged insane, for whom Carrie Alward was appointed conservator; Elizabeth S. Alward; Grace Alward (now Grace Gulick) ; Carrie Alward; Mabel Alward; Benjamin F. Alward; George E. Alward; Charles W. Alward, and Guy H. Alward. To the six daughters by the second clause of his will he bequeathed a legacy of $250 each, and by the same clause to each of his

four sons he bequeathed a team of horses and harness there-
for. The clause concluded with this provision: "In case
either of my said children above named shall have received
any advances of money or property before my decease, then
in such case the amount so advanced to either shall be de-
ducted from the respective share of such child receiving
said advance." The will also provided for the payment of
all the testator's debts and funeral expenses, and contained
a residuary clause dividing the remainder of his property
equally among his children or their legal heirs. The testa-
tor executed his will June 2, 1885, and it was admitted to
probate in Fulton county on November 27, 1896. He died
seized in fee of 425 acres of land in Fulton county and
160 acres in Mason county. Stephen Alward, who has been
adjudged insane and for whom Benjamin Richmond was
conservator, had a life lease on 160 acres of the land, and
his interest was canceled by his death January 3, 1922,
pending this suit. Henry Bartles is in possession of the
Mason county land as tenant, and Wiley and Alonzo Ray
are in possession of 193 acres of the Fulton county land
as tenants. Elizabeth S., Carrie, Mabel and Guy H. Alward
are in possession of 100 acres of said land. Other named
tenants are in possession of certain parts of the land leased
to Stephen Alward. Eliza Alward, the widow, died July 4,
1918, after having executed a mortgage on the Mason
county land to R. M. Kingsland, as trustee, to secure the
payment of $2500, which mortgage is a lien on the land.
Benjamin F. Alward died intestate March 29, 1918, leaving
him surviving Carrie Alward, his widow, and Pauline M.,
Benjamin M. and Mildred Alward as his children and heirs-
at-law.

Charles W. Alward, a son of the testator, filed a bill in
the circuit court of Fulton county on July 30, 1919, for
partition and for an accounting for rents, and as finally
amended it alleges, in substance, the foregoing facts and
states that he and the other eight children of the testator

surviving are each entitled to an undivided one-tenth of the lands under the residuary clause of the will, and that Pauline M., Benjamin M. and Mildred Alward, grandchildren of the testator, are each entitled to an undivided one-thirtieth, subject to the lawful rights of Carrie Alward, widow of Benjamin F. Alward. The other heirs, the tenants, the conservator of Eliza A. Alward, and R. M. Kingsland, trustee, were made defendants to the bill. The conservator and the other children of the testator filed a joint and several answer to the bill, admitting, in substance, the facts aforesaid, but denying that Carrie Alward, widow of Benjamin F. Alward, and Charles W. Alward, have any title or interest in the land. It is averred in the answer that on January 23, 1895, Benjamin Alward and his wife, Eliza, by their warranty deed conveyed to Charles W. Alward, their son, 117½ acres of land in Fulton county for a consideration named in the deed of $7000, but that no part of the consideration was ever paid by the grantee therefor, and that said conveyance was made to Charles under an agreement between Benjamin and him that the land was to be accepted by the latter as his full distributive share and interest in the estate of his father, and that the deed was so accepted by him. It is also averred that the land was worth at that time $8000, and that Benjamin received no other consideration for the land than the agreement aforesaid, and that Charles accepted the deed under the agreement, subject to an unreleased mortgage upon the land for $1000; that the deed was recorded January 30, 1895, and that on the same day Charles gave a mortgage on the land for $4000 to Emmerson Clark, and on July 17, 1901, sold and conveyed the land for a consideration of $7200; that he had possession and control of the land from the date of the deed to him and received all income thereon during the time he owned it. It is further averred in the answer that Charles received the tract of land from his father as an advancement and in full of his distributive share of the es-

tate of his father, and that under the terms of the will he
has no further right, title or claim in any of the property
of the said estate and is estopped from asserting any right
thereto. The answer further avers that the conveyance to
Charles by his father was by virtue of an agreement be-
tween them that in consideration of the making of the con-
veyance he would release his father from any and all claim
or share in his estate. The court appointed a guardian
*ad litem* for Benjamin M. and Mildred Alward, infant de-
fendants, and H. H. Atherton guardian *ad litem* for the
insane defendant, Eliza A. Alward, and they filed formal
answers to the bill. Replications were filed to all the an-
swers. The other defendants made default. The cause was
referred to the master in chancery to take the evidence and
report the same with his conclusions. He took and reported
the evidence, and found that the deed to Charles W. Alward
from his father of the 117½ acres of land was not made
in consideration of "the release of his expectancy" in his
father's estate, which was the only finding he made concern-
ing the deed. He further found the other facts substan-
tially as alleged in the bill and recommended partition as
prayed. Objections were filed to the master's report by ap-
pellants, the eight brothers and sisters of appellee, and the
conservator of Eliza A. Alward, insane, and were overruled.
Exceptions to the master's report were overruled by the
court and decree for partition as prayed was entered.

The principal contention of appellants in this appeal is
that the court erred in its findings and in its decree that
the deed of January 23, 1895, to appellee by his father and
mother was not executed by them and received by him
as an advancement and in full of all of his interest in his
father's estate under the agreement set forth in the answers
of appellants, or as an advancement under the will and its
value to be deducted from his share in the estate. Appel-
lants preface their argument by the statement that the ques-
tion to be determined by this appeal is, What interest, if

any, does appellee have in the real estate described in the
bill under the will of the testator? Their further claim is,
that the overwhelming weight of the evidence shows that
appellee did accept the conveyance under the agreement;
that the court erred in holding the evidence of the seven
witnesses for appellants incompetent as against appellee,
to-wit, Guy H., George, Elizabeth, Carrie and Mabel Al-
ward, Harriet J. Woodard and Grace A. Gulick, devisees
under the will; and also in holding that appellee was
competent to testify to facts concerning the deed in ques-
tion, and particularly as against Eliza A. Alward, the in-
sane defendant.

The undisputed evidence concerning the deed is that it
was executed on January 23, 1895, as alleged in the answers
of appellants, subject to an unreleased mortgage for $1000.
The consideration named in the deed was $7000. On the
same day appellee gave a mortgage on the land therein de-
scribed to Emmerson Clark for $4000, and on July 17, 1901,
sold and conveyed the land for a consideration of $7200.
It appears also that he had been in possession and control
of the land some time before the deed was executed. The
testimony of the seven appellants which was excluded by
the court on the ground of their incompetency to testify,
is to the effect that for some time prior to the making of
the deed appellee had repeatedly and insistently importuned
his father to deed him the land or to give him his share
of his father's estate so that he might purchase a furniture
and undertaking business in the city of Canton; that his
father at first refused to do this, but finally consented to
the making of the deed provided appellee would accept it as
his full share in his father's estate, which appellee agreed
to do. There were no papers signed at the time evidencing
the agreement, but appellee repeatedly promised his father
he would do so. In the spring of 1895, after the making
of the deed, Benjamin Alward suffered a paralytic stroke,
from which he never recovered and was never thereafter

able to go about alone or transact business. The appellants also testified to admissions on the part of appellee, both before and after the death of their father, to the effect that he received the deed from his father under the agreement aforesaid. Grace Gulick, one of appellants, testified specifically that she was at home when the deed was made by her father to appellee and saw the deed and that it was in the handwriting of appellee; that it was signed in one of the bed-rooms at her father's house and that she heard a great deal of conversation about it; that the land was valued at $7000, and appellee was to pay $1000 cash to her father and the $1000 mortgage that was then on the land, and it was stated at that time that the remaining $5000 was to be considered as appellee's share in her father's estate. Two other witnesses, Thomas A. Higgs and Alice Davis, cousins of appellee, testified to admissions of appellee to their father at their home in Trivoli, a few days after the making of the deed, to the effect that he received the deed from his father for the land in question and that it was to be considered as his share in his father's estate. They also stated that he requested their father the next day to go with him to Farmington to identify him so he could borrow money on the land; that he was going to start up in business and needed the money for that purpose. It is the claim of appellants that the testimony in the record shows that appellee mortgaged the land for $4000 and used the money in paying for a furniture business which he bought from one Gearhart, in Canton, for $7000.

Appellee, over the objection of appellants, in substance testified that the full amount that he was to pay his father for the land was $5000, and that it was deeded to him subject to a $1000 mortgage, which he paid off; that he paid his father $4000 with the money he borrowed on the farm, and in addition to that he paid $500 to his father on November 23, 1894, and a further sum of $500 on March 21, 1895. The sum and substance of his evidence is that he bought

the land outright from his father and paid for it, and also that he bought the furniture business of Gearhart for $7000, and that he used no part of the money that he borrowed on the farm to pay for that business. He denied *in toto* the evidence of Thomas A. Higgs and Alice Davis, and denied being at their father's house at the time they mentioned in their testimony. He exhibited a receipt signed by his father and a check to his father for $500 each, the receipt reciting that the money was to apply as payment on the farm, and was dated November 23, 1894. The check was dated March 21, 1895, and he testified that it was given for money paid to his father on the farm. He also made proof of paying the $1000 encumbrance on the farm. His testimony is the only testimony in the record to the effect that he bought the farm out and out from his father and paid the full purchase price, except as to the two $500 payments corroborated by the check and the receipt. He introduced some other circumstances which he claims tend to show that he used no part of the money he borrowed on the farm in the purchase of the furniture business, and some testimony by way of statements from appellants which tends to contradict their testimony.

Appellee and appellants all claim under the will of the testator. All of them are bound by the terms of the will, and no one of them is in position in this lawsuit to make any claim against its expressed provisions. A legatee or devisee cannot take under a will and at the same time dispute it in regard to deduction of an advancement. It is a universal principle of wills that a beneficiary cannot insist that provisions of a will in his favor shall be executed and those to his prejudice annulled. He must accept the instrument in its entirety or not at all. *In re King's Estate,* 310 Ill. 90; *Richardson* v. *Trubey,* 250 id. 577; *Buchanan* v. *McLennan,* 192 id. 480; *Woolley* v. *Schrader,* 116 id. 29.

It is well settled by the decisions of this court, as contended by appellants, that the expectancy of a prospective

heir of a living person may be released to the ancestor or assigned to a stranger, and in case of release to the ancestor a court of equity will enforce the contract for the benefit of the other heirs against the heir releasing his expectancy and his heirs. (*Donough* v. *Garland,* 269 Ill. 565.) A child who accepts a deed for a tract of land from his parents and takes possession of the same upon the express understanding and agreement that it is in lieu of all claim that the child may have to the residue of his parents' estate is bound by the agreement and the agreement is enforcible in equity. When such a contract is completely executed, although not witnessed in writing, it is neither contrary to the Statute of Wills nor within the Statute of Frauds. (*Galbraith* v. *McLain,* 84 Ill. 379; *Kershaw* v. *Kershaw,* 102 id. 307.) Where one brings a partition suit claiming as a co-heir and the other heirs defend on the theory that the complainant's right to inherit had been extinguished by reason of a release of his expectancy, the complainant is not a competent witness on the question whether or not he by his contract released his expectancy. (*Mires* v. *Laubenheimer,* 271 Ill. 296; *Laurence* v. *Laurence,* 164 id. 367.) The reason for this rule is, that the complainant in such a case is to be regarded as a stranger, or as a party whose heirship is cut off by his agreement with his ancestor, until the charge against him is refuted.

The contest in this case is between devisees under the will, and no one of them, under the facts in this record, is in a position to dispute the fact that appellee is a devisee under the will, notwithstanding the fact that the testator may have made the alleged agreement. By the express terms of the will appellee is by the residuary clause made a devisee to the lands of the testator and is to take an equal share with the other children of the testator in the residuary estate. By the further provisions of the will as above quoted, if appellee received any advances of money or property before the testator's death, the amount so advanced to

him shall in such case be deducted from his share in the estate. This is a provision of the will that is binding on all of the parties to this suit. The will speaks from the death of the testator. In other words, the words above quoted from his will are his last declaration on the question of the advancement. If the legal and competent evidence shall finally show that the appellee received an advancement of money or property in full of his share in the estate, appellants have the right to have the advancement deducted from his share, as he has elected to sue as a devisee under the will and because by the will the testator so modified the agreement. He must be considered as having so modified it because his latest declaration is, in effect, that the tract of land received by appellee as his entire share of the estate, if he did so receive it, shall under the will be simply deducted from his share.

Technically speaking, "advancement" is a term that is only applicable in the case of a parent dying intestate. It is, however, the well established law in this country that where a testator applies the term "advancement" to money or property devised by him to one or more of his children, made either before or subsequent to the execution of his will, and directs, in substance, that it shall be treated as an advancement and deducted from such child's share under the will, the terms of the will will be enforced against his legatees and devisees. Such amounts may be ascertained by parol evidence. (*In re Moore,* 61 N. J. Eq. 616; *Vreeland* v. *Vreeland,* 65 id. 668; *Baker* v. *Safe Deposit Trust Co.* 93 Md. 368; *Hunt* v. *Osborn,* 83 N. Y. Supp. 879; *Appeal of Mengel,* 116 Pa. St. 292; *Frye's Admr.* v. *Avritt,* 24 Ky. 183; 1 Underhill on Wills, sec. 447; Page on Wills, sec. 787; Thompson on Wills, sec. 433.) It seems to be a general rule as to advances, that they are not to be deducted from legacies or devises given in a will where the testamentary gift or devise does not precede the advance payment or gift, except where the will so directs or there be

an agreement on the part of the beneficiary that the prior payment shall be applied to reducing the legacy or devise. (2 Alexander on Wills, sec. 733; 1 Underhill on Wills, sec. 447.)    Parol evidence, including admissions of the legatee or devisee, is received as evidence where the testator in the will directs advancements to be accounted for, to show what advancements are within the terms of the will.   (1 Underhill on Wills, sec. 447.)   Declarations of the parent contemporaneous with making the gift, or subsequent verbal declarations by him to the child and not at the time controverted by the latter, may be offered in evidence.   (2 Alexander on Wills, sec. 742.)   The value of land advanced, when not fixed by the will, is to be determined as of the date of taking possession as owner, although the advancement was made in parol and the deed to the land was not delivered until after possession was acquired. (1 R. C. L. 678.)

It is clear that under the authorities the actual agreement or understanding, if any was made or had, is provable in this case.   The will is also admissible in connection with this proof,—that is, the above quoted part thereof,—as proof that the final intention of the testator was that the advancement should be deducted from appellee's share under the will and not be considered as his full share under it, according to the agreement the testator and appellee made, if it should finally be found from the evidence that such was the agreement.   The court will thus be advised of all the proper evidence in the case, and can construe the will, under the evidence, in view of the rule that none of the oral evidence can be accepted for the purpose of varying the terms of the will.   The testator had the right to make provisions in his will more favorable to appellee than the terms of the contract.

The evidence of appellants excluded by the court tends to show that the testator valued his estate at $50,000 at the time he entered into the alleged contract with appellee

315—11

and that he valued the tract of land claimed to be advanced at $7000; that he required appellee to pay him $1000 in money and to discharge the lien of $1000, thereby making an advancement to him of $5000 worth of land as his share in the estate,—one-tenth of his estate at that time. The evidence in the record also tends to show that appellants after the death of the testator valued the estate at much more than $50,000, and that they offered appellee in compromise $10,000 for his interest therein, which evidence, we may further say, was not admissible against appellants as tending to contradict them in their testimony concerning the agreement of the testator with appellee on the question of advancement, if it shall appear, as claimed by them, that such offer was made by way of compromise. On the theory of the decision that the advancement to appellee, if any, is to be deducted from his share in the estate, appellants were competent witnesses to testify as to all relevant facts on the question whether or not the land was deeded as an advancement to appellee,—that is, to prove the contract, or any proper declarations of the testator or of appellee concerning the question of advancement under the rules above laid down. But mere declarations of the testator on that question, made in the absence of appellee, are not provable. In a suit for the partition of land, involving the question of advancements by the common ancestor, the parties cannot be said to sue and be sued as heirs of an intestate, any more than if the property had been acquired otherwise than by inheritance, and that clause of the statute which inhibits parties in interest or of record in such cases from becoming witnesses on their own motion has no application. In such a case the property belongs to the litigants, and it makes no difference how they acquire the title,—whether by purchase or descent. The exception to this rule is where they sue or defend in certain representative capacities. The statutory rule that such parties as heirs are incompetent as witnesses is intended to protect the estate from the assaults of

strangers, and relates to proceedings wherein the testimony of such parties would tend to impair the estate. The testimony in this case, under the interpretation of the will that we have given, has no tendency to impair the estate, as all of the parties are admitted to be devisees. The same rule, of course, applies to devisees in a partition suit under a will where the testimony of the devisee does not tend to impair the estate as it would do if any one of the devisees could be challenged as being a devisee. (*Laurence* v. *Laurence, supra; Kershaw* v. *Kershaw, supra; Pigg* v. *Carroll,* 89 Ill. 205.) Appellee would be a competent witness, to the same extent as appellants, to testify in his own behalf except for the fact that a conservator defends for one of the insane devisees. As to such conservator he is an incompetent witness, unless his testimony may come within some one of the exceptions to section 2 of our act on evidence and depositions.

Sections 4 to 8, inclusive, of our statute on descent, concerning advancements, are not applicable to this case, as all of them pertain to intestate estates, only. Some of the decisions above cited hold to the same effect.

We have not intended to indicate what the decision in this case should be on the merits, as the decree of the circuit court must be reversed for errors in its rulings on the admissibility of evidence and as to the competency of witnesses, as already indicated.

The answers of appellants set up two defenses, in each of which they insist that appellee has received his full share in the estate. However, they set up in their answers all the facts under which they make such claim, and their defenses cannot be considered as unavailable because they erroneously claim that such facts are a complete bar and not simply a partial defense.

The decree of the circuit court is reversed and the cause remanded for further consideration.

*Reversed and remanded.*